PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. L.J. SHAW AND COMPANY et al., Defendants-Appellees.

First District (4th Division)   No. 1—96—0535

Opinion filed August 21, 1997.

Robert Marc Chemers and Scott L. Howie, both of Pretzel & Stouffer, Chartered, of Chicago, for appellant.

Richard D. Heytow, of Chrystal, Heytow & Warnick, P.C., of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

In this declaratory judgment action, plaintiff, Pekin Insurance Co. (Pekin), appeals from the trial court's entry of summary judgment against Pekin and in favor of defendants, Pekin's insureds, L.J. Shaw & Company (Shaw), and Shaw's employee, William L. Hall (Hall). The trial court found that, under the provisions of an insurance policy issued to defendants, Pekin had a duty to defend Shaw and Hall in an underlying action brought against them. Specifically, the trial court held that the "professional services" exclusion relied upon by Pekin did not preclude coverage in the underlying action. On appeal, Pekin contends that coverage is unambiguously excluded where the underlying complaint alleges injuries due to defendants' rendering or failure to render a professional service. Defendants respond that the allegations of the underlying complaint fall within, or potentially within, the coverage provided for in the policy and were not clearly excluded by the provision relied upon by Pekin.

The underlying action in which Shaw and Hall, among others, were named as defendants was brought by Joseph P. Caulfield & Associates, Inc. (Caulfield), in the United States District Court for the Eastern District of Missouri. According to the complaint, on January 23, 1994, a fire occurred at the printing plant of Litho Productions, Inc. (Litho), in Madison, Wisconsin. The fire caused Litho to "suffer substantial damage" to its building, equipment, and inventory. Shaw and Hall, "persons experienced with insurance claim negotiations and adjustment, represented [Litho's insurers] in the initial Fire Loss claim discussions with Litho." Litho, inexperienced in such matters, "knew it needed professional assistance" in negotiating its fire loss claim and therefore retained Caulfield, a company "experienced and expert in fire loss investigations *** and fire loss claim settlements."

The Caulfield complaint goes on to allege that, during the course of the negotiations, Shaw and Hall, along with Litho's insurers and other entities, acted in a manner meant to induce Litho to terminate its relationship with Caulfield. Specifically, the complaint alleges that Hall, in the course of his employment with Shaw, "falsely represented *** that [Caulfield] grossly overstated, and possibly engaged in fraudulent misrepresentation, of Litho's Fire Loss damages as a pretext to cause [Caulfield's] termination *** [by] Litho in the Fire Loss claim negotiations." These allegations form the basis for count II, alleging that Shaw and Hall, among others, participated in a "civil conspiracy," and count V, alleging "intentional interference with [c]ontract."

Upon being named as defendants, Shaw and Hall tendered the Caulfield complaint to Pekin seeking coverage pursuant to the "Businessowners Policy" issued to Shaw by Pekin. Pekin refused coverage and filed the instant action seeking a declaration that it had no duty to defend or indemnify defendants. Pekin maintained that the injuries alleged in the Caulfield complaint resulted from defendants' conduct in performing independent insurance adjusting on behalf of Litho's insurers. These allegations, Pekin argued, fell within the policy's "professional services" exclusion, which provided:

"This insurance does not apply to:
* * *

j. 'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' due to rendering or failure to render any professional service. This includes but is not limited to:
* * *

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications[.]"

Defendants filed a counterclaim seeking a declaration of their rights under the policy. Defendants relied on the following coverage provision:

"b. This insurance applies:
* * *

(2)
To:
(a) 'Personal injury' caused by an offense arising out of your business excluding advertising, publishing, broadcasting or telecasting done by or for you[.]"

Defendants also pointed to the policy's definition of "personal injury," which stated:

" 'Personal Injury' means injury, other than 'bodily injury', arising out of one or more of the following offenses:

\* \* \*

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]"

Following a hearing on the parties' cross-motions for summary judgment, the trial court ruled that coverage was afforded under the policy's general terms and that the exclusion relied upon by Pekin, when read together with the coverage terms, created an ambiguity. According to the court: "I don't believe that the allegations against the Defendants Shaw and Hall in the underlying case constitute what is really intended in that exclusion as rendering or the failure to render professional services to a client, and \*\*\* if I take Plaintiff's interpretation, there is not much of a meaning at all to the subcoverage d., which is the oral and written publication of material that slanders or libels a person." The court also concluded that the professional services exclusion was not intended to bar coverage where the underlying complaint alleged liability and injuries to a third party, Caulfield, and not the underlying defendants' own clients, Litho's insurers. Based on this reasoning, the trial court entered an order granting summary judgment in favor of defendants on Pekin's duty to defend.[1] From this final order (155 Ill. 2d R. 301), Pekin appeals.

■ Our review of the trial court's entry of summary judgment is *de novo. Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073 (1993). The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment. *Crum & Forster*, 156 Ill. 2d at 391, 620 N.E.2d at 1077; *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 668 N.E.2d 59 (1996).

■ In determining whether an insurer has a duty to defend its insured in an underlying lawsuit, the court must compare the complaint's allegations to the relevant coverage provisions of the insurance policy. *Crum & Forster*, 156 Ill. 2d at 393, 620 N.E.2d at 1079; *McDowell & Colantoni*, 282 Ill. App. 3d at 241, 668 N.E.2d at 63. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action. *Crum &*

---

[1] The trial court declined to reach the issue of whether Pekin had a duty to indemnify defendants under the policy. To prevent jurisdictional problems on appeal, the court's order dismissed without prejudice any claims relating to Pekin's alleged duty to indemnify, leaving no claims or issues pending between the parties.

*Forster,* 156 Ill. 2d at 393, 620 N.E.2d at 1079; *McDowell & Colantoni,* 282 Ill. App. 3d at 241, 668 N.E.2d at 63. It is the burden of the insurer to show that a claim falls within a provision that limits or excludes coverage. *McDowell & Colantoni,* 282 Ill. App. 3d at 241, 668 N.E.2d at 62. An exclusion relied upon to deny coverage must be clear and free from doubt. *McDowell & Colantoni,* 282 Ill. App. 3d at 241, 668 N.E.2d at 62. All the provisions of an insurance policy must be read in light of each other to determine whether an ambiguity exists. *McDowell & Colantoni,* 282 Ill. App. 3d at 241, 668 N.E.2d at 62. Any ambiguity will be construed against the drafter of the policy and in favor of coverage. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90, 607 N.E.2d 1204 (1992); *McDowell & Colantoni,* 282 Ill. App. 3d at 241, 668 N.E.2d at 62. However, the court will not search for ambiguity where none exists. *Crum & Forster,* 156 Ill. 2d at 391, 620 N.E.2d at 1078.

In the present case, Pekin contends that the professional services exclusion unambiguously precludes coverage for Shaw and Hall in the underlying action. In support of its argument, Pekin cites *State Street Bank & Trust Co. v. INA Insurance Co.,* 207 Ill. App. 3d 961, 567 N.E.2d 42 (1991), where this court discussed the meaning of the term "professional service" in the context of an insurance policy exclusion. In *State Street Bank,* we explained that the term is not limited to services performed by persons who must be licensed by a governmental authority in order to practice their professions. *State Street Bank,* 207 Ill. App. 3d at 967, 567 N.E.2d at 47. Rather, it refers to any business activity conducted by the insured that involves specialized knowledge, labor, or skill and is predominantly mental or intellectual as opposed to physical or manual. *State Street Bank,* 207 Ill. App. 3d at 967, 567 N.E.2d at 47. For example, in that case, we held that the exercise of business judgment in conducting banking services fell within a professional services exclusion. *State Street Bank,* 207 Ill. App. 3d at 967, 567 N.E.2d at 47.

Pekin also cites *Hurst-Rosche Engineers v. Commercial Union Insurance Co.,* 51 F.3d 1336 (7th Cir. 1995), which we find factually analogous and highly instructive. In *Hurst-Rosche,* an engineering firm hired by a local housing authority to supervise a construction project was sued by a contractor working on the project for libel and tortious interference with contract. The contractor based these claims on a letter written by the engineering firm's general manager to the company that issued the performance bond guaranteeing the contractor's work. The letter criticized the contractor's work as untimely and substandard, and as result, the contractor alleged, it lost the sums due on that project and any chance that the issuer

would underwrite future bonds. Like defendants here, the engineering firm sought coverage under an insurance policy expressly covering injuries " 'arising out of [the] ... [o]ral and written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.' " *Hurst-Rosche*, 51 F.3d at 1340. The insurer refused coverage, however, under the policy's exclusion for injuries " 'arising out of the rendering or failure to render any professional services *** including *** [t]he preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications.' " *Hurst-Rosche*, 51 F.3d at 1340. Applying Illinois law, and specifically citing *State Street Bank*, the seventh circuit concluded that, even though the letter was sent to an entity other than the housing authority, the claims arose from the general manager's rendering of his professional opinion with respect to the contractor's performance on the construction project. *Hurst-Rosche*, 51 F.3d at 1343. These allegations, the court held, fell "squarely within the professional services exclusion, which excluded coverage for claims arising from the 'preparing' of 'opinions' and 'reports.' " *Hurst-Rosche*, 51 F.3d at 1344.

In addition to *Hurst-Rosche*, our research has uncovered another factually similar federal case. In *Erie Insurance Group v. Alliance Environmental, Inc.*, 921 F. Supp. 537 (S.D. Ind. 1996), the United States District Court for the Southern District of Indiana was asked to determine whether a professional services exclusion to "personal injury" coverage barred claims of defamation and tortious interference with contract where the insured, hired by a local school corporation to perform inspections, reported to the school corporation that the underlying plaintiff failed to remove all of the asbestos from a local high school.[2] In addition to informing the school corporation, the insured also allegedly reported these findings to "others," including a state government environmental agency. Among other damages, the underlying plaintiff alleged that it lost its license as an asbestos contractor with the State of Indiana as a result of the insured's ac-

---

[2]Another issue before the district court was whether these claims fell under the policy's coverage for "advertising injury." The district court found the "advertising injury" provision inapplicable, and the seventh circuit affirmed this determination. *Erie Insurance Group v. Alliance Environmental, Inc.*, 921 F. Supp. at 548-49, *aff'd by Erie Insurance Group v. Sear Corp.*, 102 F.3d 889, 895 (7th Cir. 1996). The district court's decision as to the professional services exclusion, however, was "not challenged on appeal" and therefore not addressed in the seventh circuit's opinion. *Erie Insurance Group*, 102 F.3d at 891 n.1.

tions. The insured sought coverage under policy provisions expressly covering injuries arising out of "libel, slander, or defamation of character," but its insurer refused coverage citing the policy's exclusion for "personal injury" damages " 'due to ... any service of a professional nature, including but not limited to *** the preparation or approval of maps, plans, opinions, reports, surveys, designs, or specifications.' " *Alliance*, 921 F. Supp. at 541. Applying Indiana law, but also citing *State Street Bank, Hurst-Rosche*, and cases from several other jurisdictions, the *Alliance* court concluded that the professional services exclusion barred coverage. According to the court, "[a]ll of the allegedly defamatory communications" made by the underlying defendant about the underlying plaintiff's faulty asbestos removal were "made in the course of providing *** professional services for the school corporation."[3] *Alliance*, 921 F. Supp. at 546.

Notably, the *Alliance* court addressed specific concerns raised by the trial court here about the scope of a professional services exclusion. First, the *Alliance* court rejected the argument that a professional services exclusion applies only to claims by someone to whom the underlying defendants provided their professional services directly. *Alliance*, 921 F. Supp. at 541. The *Alliance* court reasoned:

> "Nothing in the language of the professional services exclusion *** limits the exclusion to claims brought by the clients of the professional, *i.e.*, to first party claims. The exclusion here applies to damages or liability 'due to any service of a professional nature' and does not require privity between the insured and the claimant. In addition, cases from the Seventh Circuit and Third Circuit have applied professional service exclusions to claims by others, called 'third party' claims. [Citing *Hurst-Rosche*, 51 F.3d 1336; *Harad v. Aetna Casualty & Surety Co.*, 839 F.2d 979, 983-85 (3d Cir. 1988).] *** The fact that the [underlying plaintiff], rather

---

[3]Again, the professional services exclusion was not at issue in a subsequent appeal to the seventh circuit. As the seventh circuit's opinion explained:

> "At the district court, the parties also argued the applicability of the Erie policy's separate 'personal injury' coverage provision. The court found that coverage inapplicable because Alliance's actions fell within the exclusion to that coverage for personal injury damages due to service of a professional nature. This decision is not challenged on appeal." *Erie Insurance Group v. Sear Corp.*, 102 F.3d 889, 891 n.1 (7th Cir. 1996), *aff'g Erie Insurance Group v. Alliance Environmental, Inc.*, 921 F. Supp. 537 (S.D. Ind. 1996).

than the school corporation, filed the underlying claims against the *** defendants does not alone bar application of the professional services exclusion in the Erie policy." *Alliance*, 921 F. Supp. at 542.

The *Alliance* court was also unpersuaded by the argument that a professional services exclusion in a general business liability policy is automatically inapplicable where the underlying plaintiff characterizes its claims in terms of general torts such as defamation, as opposed to breaches of duties owed uniquely by a professional. *Alliance*, 921 F. Supp. at 542. Nor is there necessarily an ambiguity, the court held, where the entity buying the general business liability policy that contains a professional services exclusion is actually "in the business of providing professional services." *Alliance*, 921 F. Supp. at 541. The court explained:

"The scope of the professional services exclusion *** must be determined from the nature of the allegedly wrongful actions rather than from the identity of the claimant or the legal theories the claimant chooses to articulate. In drawing boundaries between alleged wrongs that are within or without the scope of the professional services exclusion, the court must recognize the fact that there are different insurance policies on the market for different purposes. A professional services exclusion in a general business liability policy cannot be read so broadly as to exclude liability for any act at all taken in the course of providing professional services. Such a broad reading would exclude coverage, for example, for an automobile accident caused by an [employee] travelling from one professional meeting to another, or for negligent injury to a client visiting an *** office. The general liability policy here was quite clearly intended to cover such risks. At the same time, a professional services exclusion also should not be read so narrowly as to transform a general business liability policy into a professional errors and omissions policy. *** [T]he focus must be on whether the claimant is seeking to impose liability for acts that were taken in the course of providing professional services and which drew upon (or at least should have drawn upon) the professional's training, skill, experience, or knowledge." *Alliance*, 921 F. Supp. at 542-43.

■ In closing, the *Alliance* court set forth the following standard to apply in determining whether to apply a professional services exclusion: "[W]here the insured is being sued for taking actions in the course of providing professional services, and where those actions both are reasonably related to the services being provided and involve the use of (or failure to use) professional knowledge, skill, experience, or training, the 'professional services' exclusion applies." *Alliance*, 921 F. Supp. at 547.

■ The above case law compels us to agree with Pekin that the professional services exclusion at issue in the present case unambiguously applies and precludes coverage for Shaw and Hall in the underlying action. The underlying complaint leaves no doubt that Shaw and Hall were retained to perform professional services. The complaint specifically alleges that Litho's insurers retained Shaw and Hall "as persons experienced with insurance claims negotiations and adjustments" to negotiate Litho's fire loss claim on their behalf. In other words, as independent insurance adjusters, Shaw and Hall were asked to draw on their specialized training, knowledge, and skill in working on the fire loss claim. The complaint further alleges that Litho also needed "professional assistance" and therefore retained Caulfield, an "expert" in the field of fire loss negotiations, to represent it. The complaint goes on to allege that Shaw and Hall, among others, caused Caulfield to suffer damages during the course of and as a direct result of the claim negotiations. Specifically, the complaint alleges that Hall, as an employee of Shaw, "falsely represented" to several parties that Caulfield "grossly overstated, and possibly engaged in fraudulent misrepresentation" of Litho's fire loss damages. Hall did this, according to the complaint, as a "pretext" to cause Caulfield's termination by Litho, which eventually occurred.

As Pekin argues, these allegations sweep the underlying action directly within the policy's professional services exclusion. What Caulfield seeks to do is hold Shaw and Hall liable for injuries allegedly caused by their rendering or failure to render professional services, and more specifically through their preparing or failing to prepare "opinions" or "reports" during the fire loss claim negotiations. As in *State Street*, *Alliance*, and *Hurst-Rosche*, the exclusion must therefore apply. Put another way, Caulfield seeks damages for acts that were taken in the course of providing professional services and that drew upon (or at least should have drawn upon) defendants' professional training, skill, experience, or knowledge as independent insurance adjusters.

We further note that *Alliance* and *Hurst-Rosche* offer persuasive reasoning in opposition to the trial court's concerns about Caulfield as the underlying plaintiff. These two cases manifest that the applicability of a professional services exclusion is not limited to actions brought by the client of the insured. Like the underlying defendants in *Alliance* and *Hurst-Rosche*, Shaw and Hall were hired to conduct professional services that involved specialized skill, knowledge, and training, and in the course of performing those services, allegedly made negative statements about the performance of a third party involved in the same project. Indeed, the holdings in *Alliance*

and *Hurst-Rosche* demonstrate that an underlying plaintiff, regardless of whether he is the one for whom the professional services are rendered, may still allege injuries falling clearly within the terms of the exclusion. Moreover, that the coverage terms of the policy might cover general torts such as slander and defamation does not automatically mandate coverage where, as in *Alliance* and *Hurst-Rosche*, the underlying defendants are in the business of providing professional opinions and advice, the policy contains an exclusion for injuries arising from professional "opinions" and "reports," and the underlying complaint alleges injuries caused by the rendering of professional opinions.

In short, we find no meaningful distinction between the circumstances here and those in *Alliance* and *Hurst-Rosche*. We emphasize that those courts interpreted policy provisions that mirrored the exact ones at issue here. We remain unpersuaded by defendants that an ambiguity in the policy or the identity of the underlying plaintiff precludes application of the professional services exclusion. Instead, we agree with Pekin that the clear and unambiguous language of the exclusion relieves Pekin of any duty to defend Shaw and Hall. For these reasons, and others set forth above, we reverse the trial court's entry of summary judgment for defendant and enter judgment in favor of Pekin.

Reversed.

WOLFSON, P.J., and BURKE, J., concur.