# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-4024

_____

| | | |
|---|---|---|
| Shelter Insurance Companies, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Arkansas |
| Dan Hildreth, et al., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 11, 2001
Filed: June 27, 2001

_____

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and TUNHEIM.[1]

_____

TUNHEIM, District Judge.


This appeal involves the interpretation, under Arkansas law, of a business insurance policy that includes a "professional services" exclusion. More specifically, the issue on appeal is whether the "professional services" exclusion relieves appellee

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

Shelter Insurance Company ("Shelter") of its duty to defend Roger Hockenberry in a pending state court personal injury lawsuit based on alleged negligent treatment provided by Hockenberry to appellant Dan Hildreth. The district court[2] concluded that Shelter was not obligated to defend Hockenberry. We affirm.

## FACTUAL BACKGROUND

Appellants Dan and Kathy Hildreth sued Roger Hockenberry in Arkansas state court alleging that Hockenberry negligently caused injury to Dan Hildreth by manipulating his head and neck at Hockenberry's place of business. Hockenberry's insurer, Shelter, sought declaratory relief in United District Court for the Western District of Arkansas while the personal injury suit was pending to determine if it had a duty to defend Hockenberry. Shelter alleged that the "professional services" exclusion contained in the business insurance policy it issued to Hockenberry relieved it of its duty to defend him. The district court granted Shelter's motion for summary judgment concluding that the professional services exclusion was applicable and Shelter had no duty to defend Hockenberry.

Roger Hockenberry has operated an office of naprapathy in Arkansas for twenty three years. He describes naprapathy as a "profession of the healing arts" that involves placing ones hands on the body, palpation, dealing with connective tissue, muscles, nerves, blood supply, and blood chemistry.[3] Naprapathy has its roots in chiropractic

---

[2] The Honorable H. Franklin Waters, United States District Court for the Western District of Arkansas.

[3] Webster's Ninth New Collegiate Dictionary defines naprapathy as "a system of treatment by manipulation of connective tissue and adjoining structures (as

- 2 -

and osteopathic studies. It also includes elements of massage therapy and physical therapy. Hockenberry received a degree from the Chicago National College of Naprapathy and he holds an Illinois license to practice naprapathy.[4] Hockenberry believes that he is the only practicing naprapath in the State of Arkansas.

In his practice, Hockenberry maintains an appointment book, but he only accepts cash and checks. He keeps patient records and usually has patients fill out a patient information form, which includes a clause waiving malpractice claims. Hockenberry has a receptionist that works four days a week and part time on Saturdays.

His general procedure for treating a new patient is to determine their medical history, to conduct an examination, to perform some tests and to provide an evaluation. When a patient arrives for an appointment, Hockenberry has them lie face down on a table. He then charts their back, checks their alignment and feels for tension. If a patient has a neck injury, as in the case of Dan Hildreth, Hockenberry performs stretching treatment, palpation and massage, as well as adjustments, which may cause a popping sound.[5] He also uses heat, ice, mineral ice, diathermy, and ultrasound in his treatment of patients.

Hockenberry treated Dan Hildreth on May 12, 1999. Hildreth alleges that he sought Hockenberry's services to alleviate back pain. Hockenberry applied heat and

---

ligaments, joints, and muscles) and by dietary measures that is held to facilitate the recuperative and regenerative process of the body."

[4] The State of Arkansas does not require a license to practice naprapathy.

[5] Hockenberry believes that these popping sounds are caused by the release of body gases.

massage to Hildreth's back. He then manipulated Hildreth's head in a rapid and forceful manner. Hildreth alleges that the manipulation resulted in a herniated disc. In the underlying personal injury lawsuit, Hildreth alleges that he sustained injuries and permanent disability as a result of Hockenberry's services. His wife, Kathy Hildreth, alleges loss of consortium.

After filing a state court action, Hockenberry's insurer, Shelter, sought a declaratory judgment in federal court that it did not have a duty to defend Hockenberry. Shelter issued two insurance policies to Hockenberry for the relevant time period. The first, a homeowner's policy, is not at issue in this case. The second is a business insurance policy that provided coverage for bodily injury, property damage and personal liability. The policy reads as follows:

> We will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
>
> 1.      Bodily injury or property damage covered by this policy, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all necessary and incidental operations.

At the heart of the dispute between the parties is an exclusion in the policy for "professional services or treatment." The exclusion provides that:

> we do not cover:
>
> 9.      bodily injury or property damage arising out of the rendering of or failure to render professional services or treatment, including but not limited to:
>
> > (a)      medical, surgical, tonsorial, dental, x-ray, anesthesiology
> >
> > (b)      mental, nursing, physiotherapy, chiropody, massage

- 4 -

(c)     pharmacological, hearing aid, optical, optometrical

(d)     cosmetic, sun lamp, steam bath, ear piercing

(e)     legal, accounting, advertising

(f)     engineering, drafting, surveying or architectural

The parties made cross-motions for summary judgment and the district court found that the "professional services" exclusion was applicable. Accordingly, the district court concluded that Shelter was not obligated to defend Hockenberry. The Hildreths now appeal the district court decision.[6]

## DISCUSSION

### I.     Standard of Review

We review a district court grant of summary judgment de novo. Jurrens v. Hartford Life Insurance Co., 190 F.3d 919, 922 (8th Cir. 1999). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court is required to view the facts in a light most favorable to the nonmoving party. Jurrens, 190 F.3d at 922. Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of bringing forward sufficient evidence to establish that

---

[6] Hockenberry did not appeal the district court order and is therefore not a party to this appeal.

there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## II.    Applicability of the Professional Services Exclusion

Because this is a diversity case, we look to Arkansas state law when interpreting the provisions of the insurance policy. Bates v. Security Benefit Life Ins. Co., 146 F.3d 600, 603 (8th Cir. 1998). The Court is to determine the plain and ordinary meaning of an insurance contract as a matter of law. Norris v. State Farm Fire & Casualty Co., 16 S.W.3d 242, 244 (Ark. 2000). Exclusionary endorsements are subject to the same standard, that its terms must be expressed in clear and unambiguous language. Id. Insurance policies are generally construed strictly against the insurer and liberally in favor of the insured. Keller v. Safeco Ins. Co., 877 S.W.2d 90, 92 (Ark. 1994). If an ambiguity exists, the Court must construe the ambiguity in favor of the insured. Id. In order for an ambiguity to exist a "term in the insurance policy must be subject to more than one equally reasonable interpretation." Watts v. Life Ins. Co. of Ark., 782 S.W.2d 47, 49 (Ark. Ct. App. 1990) (citing Wilson v. Countryside Casualty Co., 634 S.W.2d 398, 399 (Ark. 1982)).

In light of these principles, we find, as did the district court, that the services Hockenberry provided to Dan Hildreth constitute professional services or treatment within the meaning of the policy exclusion, relieving Shelter of its duty to defend Hockenberry. The language of the exclusionary endorsement is clear and unambiguous. Although the insurance policy does not specifically define the term "professional services," only an unreasonable interpretation of the policy language

could justify requiring Shelter to defend Hockenberry under the circumstances present in this case. The Court is unwilling to make such an interpretation.

A number of courts have interpreted similar "professional services" exclusions and have defined a "professional act or service" as "one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or manual." See, e.g., Multnomah County v. Oregon Automobile Ins. Co., 470 P.2d 147, 150 (Or. 1970) (citing Marx v. Hartford Accident and Indemnity Co., 157 N.W.2d 870 (Neb. 1968)). In interpreting these provisions, courts have looked to "the act or omission itself . . . and not the title or character of the party who performs or fails to perform the act" to determine whether a particular service or treatment is professional in nature. Id.

As a naprapath with an Illinois license and a four-year degree from an institution dedicated solely to teaching naprapathy, Hockenberry possesses specialized knowledge that is more intellectual in nature than it is physical or manual. Hockenberry evaluates his patients and based on those evaluations, employs various treatment alternatives. These undoubtedly are intellectual decisions rendering his services or treatments "professional" within the meaning of the policy.

In addition, the services or treatments provided by a naprapath compare favorably to other professions that are explicitly excluded in the Shelter policy. The language of the clause at issue provides an inexhaustive and nonexclusive list of professional services or treatments that are not covered by the policy. A number of those services have elements that are closely related to naprapathy or which are

incorporated into the practice of naprapathy. The treatment provided by Hockenberry includes elements of massage and physiotherapy, both specifically excluded "professional services" under the policy. In addition, naprapathy grew out of chiropractic and osteopathic services. The similarity of naprapathy to these other professional services is telling.

Moreover, Hockenberry's patients clearly believe that he provides a professional service or treatment. Patients schedule appointments in advance and visit Hockenberry to alleviate some infirmity or ailment. While certainly not dispositive on the issue, this fact also supports the conclusion that naprapathy falls within the professional services exclusion of policy.

Finally, we are unwilling to transform the business insurance policy at issue into one for malpractice insurance. As noted above, Hockenberry performs services that are closely related to chiropody and massage. While those professions purchase malpractice insurance to cover the types of injuries that occurred in this case, Hockenberry chose not to do so. Shelter should not be compelled to defend or cover him for risks that it did not insure.

## CONCLUSION

The insurance policy language at issue here can only reasonably be read in one manner: that the conduct of Hockenberry, which allegedly caused the injury to Dan Hildreth, falls with the "professional services or treatment" exclusion and that Shelter is relieved of its duty to defend Hockenberry in the pending state court personal injury action.

The judgment of the district court is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.