# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2728

_____

American Economy Insurance          *
Company, a Indiana Corporation,     *
                                    *
          Plaintiff - Appellee,     *
                                    *   Appeal from the United States
     v.                             *   District Court for the Eastern
                                    *   District of Missouri.
Valerie Jackson, daughter of decedent   *
Freddie Mae Burns,                  *
                                    *
          Defendant - Appellant.    *

_____

Submitted: January 8, 2007
Filed: February 14, 2007

_____

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

_____

READE, District Judge.

Valerie Jackson appeals the district court's[2] adverse grant of summary judgment. We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[2]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

**I.**

A heat wave struck Missouri in April of 2001. On April 9, 2001, Freddie Mae Burns died as a result of excessive heat while she was a patient at Leland Health Care Center ("Leland"), in University City, Missouri. Leland is a 128-bed, skilled nursing facility, which provides professional care and treatment to its residents. Three other Leland residents also died during the heat wave.

In April of 2001, Teresa Johnson was Leland's administrator. Prior to becoming administrator, Johnson had worked as a registered nurse and director of nursing. Johnson was in charge of deciding whether to switch the HVAC system from heat to air conditioning on April 9, 2001. When she made decisions regarding temperature regulation at Leland, Johnson exercised professional judgment and considered the various medical conditions of Leland's residents.

Leland Health Care, LLC ("Leland LLC") owns and operates Leland. Morris Esformes is one of the owners of Leland LLC. Esformes owns and manages many nursing homes in Florida, Missouri and Illinois.

Esformes is also the sole shareholder of EMI Enterprises, Inc. ("EMI"), a corporation with its office in Lincolnwood, Illinois. EMI did not have a management agreement with Leland, although it did have management agreements with several of Esformes's other nursing homes.

Burns's daughter, Valerie Jackson, sued several defendants in Missouri state court alleging wrongful death. Among the defendants were Leland LLC and EMI. A jury found Leland LLC and EMI liable and awarded Jackson $275,000.

EMI is a named insured on two different insurance policies. First, there is the Commercial General Liability policy ("NACIC Policy") issued by North American

Capacity Insurance Company ("NACIC"). On July 1, 2000, NACIC entered into the insurance contract with Leland LLC and EKS Management, Inc. ("EKS"). Several of Esformes's nursing homes, including Leland, were named insureds in the NACIC Policy. The NACIC Policy provided two separate forms of coverage, namely, (1) coverage for bodily injury and (2) coverage for professional liability. The NACIC Policy was in effect at the time of the heat wave. During the 2000 to 2001 policy period, the total premium for the NACIC Policy was $907,678. In 2001, the premium for professional liability coverage was between $300 and $500 per bed. The NACIC Policy indicates that it would cost the insured $78,000 to add coverage for an additional nursing home.

Second, American Economy Insurance Company ("American Economy") issued a Special Businessowners Policy ("Policy") to EMI during the relevant period. EMI is the only named insured on the Policy. The Policy covers the contents of EMI's office. EMI is described in the Policy as an "OFFICE—ACCOUNTING/BOOKKEEPING" business. The "PREMISES BUILDING" which appears on the Policy is "3737 W ARTHUR AVE LINCOLNWOOD, IL 60712." EMI paid an annual premium of $325 for the Policy. All billing notices for the Policy were sent to EMI at its Illinois address.

American Economy has never written policies for nursing homes, and EMI's insurance agent did not intend for the Policy to cover professional liability occurrences or other occurrences at Leland. Healthcare facilities are ineligible for coverage under the Policy.

NACIC settled with the families of two of the four decedents. NACIC and American Economy settled with the third decedent's family. The Missouri state court judgment in Jackson's favor remains unpaid due to inadequate funds under the NACIC Policy.

## II.

With respect to the NACIC Policy and the four deaths that occurred at Leland, NACIC was involved in litigation in Missouri state court. Leland LLC and EKS sued NACIC. As relief, they asked the Missouri state court to determine NACIC's coverage obligations under the bodily injury and professional liability portions of the NACIC Policy. The Missouri state court concluded that NACIC had a duty to defend or indemnify Leland LLC and EKS up to the $1 million policy limit under the professional liability portion of the NACIC Policy. It determined that NACIC had no duty to defend or indemnify Leland LLC and EKS under the bodily injury portion of the NACIC Policy.

American Economy then filed suit against Jackson, Esformes, EMI and others in the Eastern District of Missouri. As relief, American Economy asked the district court to declare that it did not have a duty to indemnify.[3] The district court applied Illinois substantive law and determined that American Economy had no duty to indemnify because the Policy's professional services exclusion applied. Having determined that no duty to indemnify existed, the district court granted American Economy's motion for summary judgment.

## III.

In her timely appeal, Jackson raises two issues. First, she argues that the district court erred in applying Illinois substantive law. Second, she argues that it erred in granting summary judgment to American Economy because the professional services exclusion in the Policy is ambiguous and inapplicable.

---

[3]Jackson is the only defendant who appealed the district court's judgment.

We review de novo the district court's grant of summary judgment, and we view the evidence in the light most favorable to Jackson, the non-moving party. Gordon v. Shafer Contracting Co., 469 F.3d 1191, 1194 (8th Cir. 2006). Further, "[w]e review de novo a district court's interpretation of the contractual provisions of an insurance policy." Allianz Ins. Co. of Can. v. Sanftleben, 454 F.3d 853, 855 (8th Cir. 2006).

## A.

We need not determine whether the district court properly applied Illinois substantive law in this matter. At oral argument, Jackson's counsel conceded that the choice of law question has no impact on the outcome of the second question in this case, that is, whether the professional services exclusion is applicable. Moreover, American Economy's counsel agreed that we need only decide the choice of law question if we were to reverse the district court's grant of summary judgment. Therefore, there is no need to decide whether Missouri or Illinois law is applicable, and we use the law of both states interchangeably throughout the next section.

## B.

"[T]he insurer has the burden of proving that an insurance policy exclusion applies." Am. Family Mut. Ins. Co. v. Co Fat Le, 439 F.3d 436, 439 (8th Cir. 2006) (applying Missouri law and citing Christian v. Progressive Cas. Ins. Co., 57 S.W.3d 400, 403 (Mo. Ct. App. 2001) (per curiam)); see also Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co., 51 F.3d 1336, 1342 (7th Cir. 1995) (applying Illinois law and stating that "[t]he burden of proving that a claim falls within an exclusion rests squarely on the insurer"). "An exclusion relied upon to deny coverage must be clear and free from doubt." Pekin Ins. Co. v. L.J. Shaw & Co., 684 N.E.2d 853, 855 (Ill. App. Ct. 1997); see also Bowan ex rel. Bowan v. Gen. Sec. Indemn. Co. of Ariz., 174

S.W.3d 1, 5 (Mo. Ct. App. 2005) (construing exclusion clauses "strictly against the insurer").

The Policy contains a professional liability exclusion clause in the Businessowners Liability Coverage Form ("Liability Form"), which precludes coverage of claims arising from the rendering or failing to render professional services. The Liability Form provides, in pertinent part:

**A. COVERAGES**

**1. Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance does not apply. . . .

**B. EXCLUSIONS**

**1. Applicable to Business Liability Coverage-**
This insurance does not apply to: . . . .

**j. Professional Services**
"Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any

professional service.  This includes but is not limited to: . . .

> (4)     Medical, surgical, dental, x-ray or     nursing    services, treatment, advice, or instruction;
>
> (5)     Any health or therapeutic service treatment, advice or instruction; . . . .

(emphasis in original).

As a preliminary matter, we find that the terms at issue in the Policy are not ambiguous.[4]  The words in the Policy "should be given their plain and ordinary meaning, and [a] court should not search for an ambiguity where there is none." U.S. Fire Ins. Co. v. Schnackenberg, 429 N.E.2d 1203, 1205 (Ill. 1981); see also Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77 (Mo. 1998) (en banc) ("The language in a policy is given its ordinary meaning unless another meaning is plainly intended."); Auto. Club Inter-Ins. Exch. v. Medrano, 83 S.W.3d 632, 638 (Mo. App. Ct. 2002) ("[T]he policy language must be construed in accordance with the plain and ordinary meaning of the words, and construction is required only where ambiguity exists." (citations omitted)).  "The provisions of an insurance policy are read in the context of the policy as a whole." Columbia Mut. Ins. Co., 967 S.W.2d at 77; see also Douglas v. Allied Am. Ins., 727 N.E.2d 376, 380 (Ill. App. Ct. 2000) ("A court is not to read [contract] provisions in isolation but is required to read [them] in light of each other to determine whether an ambiguity exists.").  The professional services exclusion in the Policy is not ambiguous.  The terms in the Policy have plain meaning, and judicial construction is unnecessary.

---

[4]In her resistance to American Economy's motion for summary judgment, Jackson argued that extrinsic evidence should not be considered, and she admitted that "[t]here is no ambiguity in the insurance contract . . . ."

The issue in this case is whether American Economy has a duty to indemnify EMI under the Policy for the underlying lawsuit, not whether it had a duty to defend. The duty to indemnify turns on whether the claim is <u>actually</u> covered by the Policy. <u>See</u> <u>Outboard Marine Corp. v. Liberty Mut. Ins. Co.</u>, 607 N.E.2d 1204, 1221 (Ill. 1992) (explaining that "the duty to indemnify arises if the insured's activity and the resulting loss or damage *actually* fall within the [comprehensive general liability] policy's coverage") (emphasis in original); <u>McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.</u>, 989 S.W.2d 168, 173 (Mo. 1999) (en banc) ("The duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement."). The duty to indemnify is distinct from and narrower than the duty to defend, which turns on whether the claim is <u>potentially</u> covered by the Policy. <u>See</u> <u>Outboard Marine Corp.</u>, 607 N.E.2d at 1221 (distinguishing between the two duties); <u>McCormack Baron</u>, 989 S.W.2d at 170 (same). Here, it is appropriate to look at the facts that were determined during the Missouri state court jury trial.

The district court appears to have considered only the allegations in Jackson's Missouri state court petition. It relied on a case involving the duty to defend, discussed the allegations and stated that the petition "is for negligent provision of nursing or other professional services, and thus falls within the professional services exclusion of the [Policy]." <u>Am. Economy Ins. Co. v. EMI Enters., Inc.</u>, No. 4:04CV47 JCH, 2006 WL 1522997, at *7 (E.D. Mo. May 30, 2006); <u>see</u> <u>id.</u> (distinguishing but relying on <u>Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement</u>, 741 N.E.2d 253, 254 (Ill. 2000), <u>rev'g</u> 722 N.E.2d 280 (Ill. App. Ct. 1999)). The district court should have examined the established facts to determine whether American Economy had a duty to indemnify. <u>Outboard Marine Corp.</u>, 607 N.E.2d at 1221; <u>McCormack Baron</u>, 989 S.W.2d at 173. However, the result is the same when the relevant facts are considered.

We must look at "'the act or omission itself . . . and not the title or character of the party who performs or fails to perform the act' to determine whether a particular service or treatment is professional in nature." Shelter Ins. Cos. v. Hildreth, 255 F.3d 921, 925 (8th Cir. 2001) (applying Arkansas law to a professional services exclusion in a business insurance policy and quoting Multnomah County v. Or. Auto. Ins. Co., 470 P.2d 147, 150 (Or. 1970) (ellipsis in Shelter Ins.)). It is recognized that a "professional act or service" is "one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominately mental or intellectual rather than physical or manual." Id. (citing Multnomah County, 470 P.2d at 150).

Here, the facts established at the Missouri state court jury trial show that the decision to refrain from switching the HVAC system to air conditioning for the medical benefit of the residents rested on Johnson's training and experience as a nurse, director of nursing and nursing home administrator. Nursing and nursing home administration are certainly occupations that require specialized knowledge and skill. Although we doubt that the professional services exclusion in the Policy, a general business liability policy, can be read so broadly as to include any act which occurs within the nursing home, the acts in question fall within the exclusion. Johnson drew upon her training, knowledge and experience as a nurse and administrator when she made the decisions that led to Burns's death. See Hildreth, 255 F.3d at 925; see also Pekin Ins. Co., 684 N.E.2d at 858 (stating that the "'focus must be on whether the claimant is seeking to impose liability for acts which were taken in the course of providing professional services and which drew upon (or at least should have drawn upon) the professional's training, skill, experience, or knowledge'" (quoting Erie Ins. Group v. Alliance Envtl., Inc., 921 F. Supp. 537, 542-43 (S.D. Ind.) (applying Indiana law), aff'd, Erie Ins. Group v. Sear Corp., 102 F.3d 889 (7th Cir. 1996))).

Although the failure to engage the HVAC system's air conditioning could be considered a ministerial or administrative act, the undisputed facts show that Johnson

considered the various medical conditions of Leland's residents before she exercised professional judgment and determined that the HVAC system would not be adjusted. Moreover, the undisputed facts show that Esformes's management of Leland, including the hiring, management and training of Johnson, the allocation of funds for the purpose of maintaining a working air conditioner and the lack of implementation of an emergency plan, are all decisions that were made using specialized training, skill, experience and knowledge. This is not a case where a maintenance worker was supposed to turn on the air conditioner each day at 10:00 a.m. but neglected to do so. Regardless of whether the focus is on Esformes or Johnson, the action or inaction involved in regulating the temperature at Leland was a "nursing" or "health" service. "Nursing" and "health" services are two of several enumerated professional services that are included in the Policy's exclusions. Just as we were "unwilling to transform the business insurance policy at issue [in Hildreth] into one for malpractice insurance[,]" we are unwilling to expand the terms of the Policy. Hildreth, 255 F.3d at 926.

## IV.

Upon de novo review, we find that the professional services exclusion in the Policy applies. The district court properly granted summary judgment in favor of American Economy.

Affirmed.

_____