481 F.Supp.2d 993 (2007)
SPIRTAS COMPANY, d/b/a Spirtas Wrecking Company, Plaintiff,
v.
FEDERAL INSURANCE COMPANY, Defendant.
No. 4:06CV00255 AGF.
United States District Court, E.D. Missouri, Eastern Division.
March 7, 2007.
Timothy E. Hayes, Thomas M. Payne, III, Timothy E. Hayes and Associates, St. Louis, MO, for Plaintiff.
Douglas S. Crosno, Jonathan A. Constine, Hogan and Hartson, Washington, DC, Gerald P. Greiman, Spencer and Fane, LLP, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
FLEISSIG, United States Magistrate Judge.
This matter is before the Court on Defendant Federal Insurance Company's ("Federal") motion for summary judgment and Plaintiff Spirtas Company's ("Spirtas") motion for partial summary judgment.[1] In *994 this removal diversity action, Spirtas claims that Federal breached a Directors and Officers liability insurance policy issued by Federal to Spirtas, by failing to defend and indemnify Spirtas in a lawsuit brought against Spirtas, as subcontractor, by MIG/Alberici LLC ("MIG"). Spirtas further asserts that Federal's breach was in bad faith. Pursuant to, the Case Management Order, the issue of coverage was to be resolved first, with the issue of bad faith to be resolved if the Court found that coverage existed. Federal now moves for summary judgment on the ground that the policy in question excludes from coverage Spirtas's claim for defense and indemnification. Spirtas asserts that the policy provides for coverage, and moves for partial summary judgment on the question of whether the policy exclusion relied upon by Federal precludes, coverage. Oral argument was held on these two motions on March 1, 2007. For the reasons set forth below, the Court, concludes that Federal is entitled to summary judgment.

BACKGROUND
Spirtas is a Missouri corporation engaged in the business of demolition and environmental abatement of structures. Spirtas has no subsidiaries, and all of its offices are located in Missouri. Federal is an insurance corporation organized and existing under the laws of Indiana, with its principal place of business in New Jersey. Federal provided Spirtas, as the named Insured Organization, with two insurance policies that included a Directors and Officers Liability Coverage Section. One policy covered the period of April 28, 2004, through May 28, 2005, and the other from May 28, 2005 through May 28, 2006. The policies contained a number of "Missouri Amendatory Endorsements," including two to the Directors and Officers Liability Coverage Section.
Insuring Clause. C in the Directors and Officers Liability Coverage Section of each policy relates to Corporate Liability Coverage, and provides as follows: "The Company shall pay Loss on behalf of the Insured Organization resulting from any Insured Organization Claim first made against such Insured Organization during the policy period, or any applicable Extended Reporting Period, for Wrongful Acts." Section IX(A)(1) of the policies provides in pertinent part: "The Company shall have the rights and duty to defend any claim covered by this Policy. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The Company's duty to defend any Claim shall cease upon exhaustion of the applicable Limit of Liability." The applicable limit of liability was $3 million.
The policies also contain an Exclusions Section (Section III). Section III(C)(2), which both parties agree contain the operative language at issue before the Court, provides as follows:
(C) No coverage will be available under Insuring Clause (C) for any Insured Organization Claim:
* * *
(2) based upon, arising from, or in consequence of any actual or alleged liability of an Insured Organization under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an Insured Organization would have been liable in the absence of the contract or agreement.
On March 5, 2004, Spirtas and MIG entered into a written Subcontract Agreement, whereby Spirtas was to serve as demolition subcontractor on a project located in New Jersey. It is undisputed that all negotiations for the Subcontract Agreement took place in Missouri, and that the Subcontract Agreement was signed in Missouri by `all parties to the *995 transaction. Under the terms of the Subcontract Agreement, Spirtas was to receive approximately $4 million in exchange for its services, and was to pay a portion of that payment to its own subcontractors, suppliers, or laborers who performed work on the project. Article II of the Subcontract Agreement required the parties to participate in industry mediation regarding disputes that might arise out of or relate to the subcontract, before recourse to any other form of binding dispute resolution, and further provided that "any disputes not resolved by mediation shall be decided by litigation on the Circuit Court of Wayne County, Michigan."
On May 10, 2005, MIG filed a five-count complaint against Spirtas in the Circuit Court for the County of Wayne, Michigan, alleging that Spirtas failed to perform its work when and as directed by MIG, thereby causing delays and disruptions in the orderly sequence of the work; submitted unjustified requests for additional compensation; and "[d]uring the course of its performance, in violation of the terms and conditions of the Subcontract, Spirtas has failed to pay some of its subcontractors, suppliers, and other job creditors from the sums paid to it by MIG for that purpose, and to deliver its work on the Project free from liens and claims from its creditors." Doc. # 22-6 ¶ 15. MIG also asserted that in violation of the forum selection clause quoted above, Spirtas initiated litigation against MIG in St. Louis County, Missouri, without first submitting the dispute to nonbinding mediation, a condition precedent to litigation.
Plaintiff incorporated the above allegations into each of the five counts of its complaint. In Count I, MIG seeks declaratory relief directing the parties to submit their dispute to mediation, and staying MIG's lawsuit pending completion of the mediation process. In Count II, MIG asserts a claim of breach of contract based upon Spirtas's failure to complete its work at the times and in the manner required under the Subcontract Agreement, submission of unjustified claims, failure to pay its job creditors, failure to initiate mediation, and filing suit in Missouri. Count III sounds in conversion and asserts that Spirtas wrongfully converted funds paid to it by MIG by refusing to pay over these funds to Spirtas's subcontractors, suppliers, and job creditors. Count W, titled, "Express or Implied Trust," asserts that as a result of the Subcontract Agreement between it and Spirtas, "an express trust relationship was established relating to payments made by MIG to Spirtas for the benefit of the Spirtas subcontractors, suppliers and job creditors on the Project." MIG claims that Spirtas's failure to do so constituted a material breach of its trust obligations. In Count V for unjust enrichment, MIG claims that Spirtas had not paid its subcontractors and suppliers, who in turn had asserted claims against MIG for nonpayment, and that Spirtas would be unjustly enriched if it were allowed to retain the benefit of MIG's payments without fully compensating Spirtas's subcontractors and suppliers. In each count except Count IV, MIG states that it has been damaged in an amount greater than $25,000.
It is undisputed that by letter dated November, 16, 2005, Spirtas presented a claim to Federal for defense and indemnity regarding MIG's action. Federal denied coverage on January 6, 2006, whereupon Spirtas filed the present action. Federal argues that as all counts in MIG's lawsuit "are based upon, arising from, or in consequence of Spirtas's "actual or alleged liability" under a written contract with MIG, and as Spirtas would not have been liable to MIG in the absence of the Subcontract Agreement, coverage for defense and indemnification is excluded. Spirtas contends that MIG's counts for declaratory *996 judgment, conversion, breach of trust, and unjust enrichment are not contingent upon the existence of a contract between MIG and Spirtas, and thus, under the proviso to the exception in question, coverage is not excluded.

DISCUSSION
Summary Judgment Standard
Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); First S. Co. v. Jim Lynch Enterps. Inc., 932 F.2d 717, 718 (8th Cir. 1991). In considering a motion for summary judgment, the facts must be viewed in a light most favorable to the non-moving party, and the non-moving party must be given the benefit of all reasonable inferences that can be drawn from the facts. St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp., 457 F.3d 766 (8th Cir.2006); Price v. Xerox Corp., 445 F.3d 1054, 1056 (8th Cir.2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. United Fire & Cas. Co. v. Gravette, 182 F.3d 649, 654 (8th Cir.1999). If this burden is discharged, the burden then shifts to the non-moving party, who is required to set forth specific facts showing there exists a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
At oral argument, both parties agreed, with respect to the issue of coverage under the policy, that there are no material issues of fact, and the issue is ripe for determination as a matter of law, based upon the language of the policy.
Choice of Law
Spirtas argues that New Jersey law governs this action, whereas Federal argues that Missouri law governs. Both parties, however, state that regardless of whether New Jersey law or Missouri law were applied, the result would be the same on the issue of coverage. Def.'s Resp. at 5; Pl.'s Resp. at 9. At oral argument, counsel for the parties reiterated this proposition. The Court also does not discern any conflict between Missouri and New Jersey law on the basic principals of contract interpretation, and looks to both Missouri and New Jersey cases on the issue of coverage. See Am. Econ. Ins. Co. v. Jackson, 476 F.3d 620, 622-23 (8th Cir.2007) (relying interchangeably upon the laws of two different states, without resolving choice of law question, to interpret an insurance policy, where rules of contract interpretation were essentially the same under the laws of both states).
Spirtas's Breach of Contract Claim Against Federal
"Under Missouri rules of construction, the language in an insurance contract is given its plain meaning if the language is plain and unambiguous." Becker Metals Corp. v. Transp. Ins. Co., 802 F.Supp. 235, 239 (E.D.Mo.1992) (citing Dieckman v. Moran, 414 S.W.2d 320, 321 (Mo.1967)) (holding that even if "poorly worded," where the intent of the policy provision is clear, there exists no ambiguity). "[I]nsofar as [an insurance policy is] open to different constructions, that most favorable to the insured must be adopted." Dieckman, 414 S.W.2d at 321. These same standards apply under New Jersey law as well. See, e.g., S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut Cas. Co., 388 N.J.Super. 592, 909 A.2d 1156, 1163 (2006).
*997 Under both Missouri and New Jersey law, insurance policy exclusions are to be strictly construed against the insurer, and it is the insurer's burden to prove that an exclusion applies. See Am. Econ. Ins. Co., 476 F.3d 620, 2007 WL 464917, at *3 (applying Missouri law); Capitol Indem. Corp. v. 1405 Assocs., Inc., 340 F.3d 547, 550 (8th Cir.2003) (same); Charles Beseler Co. v. O'Gorman & Young, Inc., 188 N.J. 542, 911 A.2d 47, 49 (2006) (per curiam). Both states also recognize that the duty to defend is broader than the duty to indemnify.[2]S.T. Hudson Eng'rs., Inc., 909 A.2d at 1163; Shelter Mut. Ins. Co. v. Ballew, 203 S.W.3d 789, 792 n. 4 (Mo.Ct.App.2006).
The Court concludes that Federal has satisfied its burden to show that the exclusion at issue here applies to Spirtas's claim for coverage. The phrase in Section III(C)(2) of the policy  "arising from" is interpreted broadly by both Missouri and New Jersey courts to mean such things as "originating from," "having its origins in," "growing out of," or "flowing from." See Capitol Indem. Corp., 340 F.3d at 550; Pa. Gen. Ins. Co. v. Zurich Ins., 2006 WL 1932658, at *4 (N.J.Super.App.Div. July 14, 2006) (unpublished per curiam). This broad reading undercuts Spirtas's argument that one or more of MIG's claims did not "arise from" Spirtas's liability under the subcontract agreement, or that absent the subcontract agreement, Spirtas would have been liable to MIG on any of MIG's claims.
MIG's breach of contract claim squarely fits within the exclusionary language of Section III(C)(2), and the proviso clearly has no application to this claim. The same is true with regard to Count I, seeking declaratory judgment, as it is based upon the allegation that Spirtas "neglected, failed and otherwise refused, to participate in mediation as required under Article 11.1 of the Subcontract," and the obligation to mediate arises solely from the Subcontract Agreement.
In support of its position that one or more counts of the MIG complaint fall outside the exclusion, Spirtas points primarily to MIG's claims for conversion, breach of express or implied trust, and unjust enrichment. Spirtas essentially relies upon the label or heading of each of these counts, noting that one can assert a claim under each of these theories without regard to the existence of a written or oral contract. Spirtas concedes, however, that in determining coverage, this Court must look to the actual claims asserted by MIG. From a review of MIG's complaint, it is clear that MIG's claims for conversion, breach of express or implied trust, and unjust enrichment also fall within the Section III(C)(2) exclusionary clause, as they "arise from" the alleged liability of Spirtas under the MIG subcontract Agreement. Counts III, W, and V are all based upon Spirtas's obligation under the Subcontract Agreement with MIG to pay Spirtas's own subcontractors. The Court concludes, that while causes of action for conversion, breach of trust, and unjust enrichment, hypothetically, are not contingent upon the existence of a contract, here all of MIG's claims against Spirtas arise from the Subcontract Agreement, and Spirtas would not have been liable to MIG under any of MIG's asserted theories of, recovery in the absence of the Subcontract Agreement.
While no Missouri or New Jersey case directly on point has been cited by the parties or found by the Court, the Court finds the holdings in cases from other jurisdictions instructive. Callas Enterprises, *998 Inc. v. Travelers Indemnity Co. of America, 193 F.3d 952 (8th Cir.1999), arose under Minnesota law and involved an exclusion in a commercial general liability ("CGL") insurance policy to the insurer's duty to defend and indemnify the insured for "advertising injuries." The exclusion applied to advertising injuries "arising out of breach of contract, other than misappropriation of advertising ideas under an implied contract." The Eighth Circuit noted that Minnesota courts interpreted the language "arising out of" very broadly, and concluded that the exclusion barred coverage for claims against the insured not only for breach of an exclusive agency contract, but also for claims of breach of duty, unfair competition, and defamation, as they flowed from or had their origins in the breach of the agency contract. Callas, 193 F.3d at 955-56. Here MIG's claims against Spirtas all flowed from Spirtas's obligations under the Subcontract Agreement and Spirtas's alleged breach of the that agreement. The Court finds unpersuasive Spirtas's attempts to distinguish Callas on the bases that it involved Minnesota law, involved a CGL policy, and that the exclusion in question referenced implied contracts.
Spirtas may be correct that it need only show that a single count in the underlying lawsuit is not subject to the exclusion, see Centermark Props. v. Home Indem. Co., 897 S.W.2d 98, 101 (Mo.Ct.App.1995), but Federal has met its burden of showing that all of MIG's claims against Spirtas are subject to the exclusion. Spirtas's reliance upon TKG Mgmt., Inc. v. Fed. Ins. Co., No. 04CC-001471 (Cir. Ct. St. Louis County Sept. 23, 2005), is misplaced. That case held that an apparently identical policy exclusion as involved here did not preclude coverage, because "not all the allegations in the underlying lawsuit and arbitration clause arose from Plaintiff's actual or alleged liability under written or oral contract or agreement." The opinion, however, provides no facts as to what the claims in the underlying lawsuit were.
Having determined that there was no coverage here, Spirtas's bad faith claim necessarily fails.

CONCLUSION
Accordingly,
IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED. [Doc. # 25]
IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment is DENIED. [Doc. # 33]
An appropriate Judgment shall accompany this Memorandum and Order.
NOTES
[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).
[2] In this case, a claim for indemnity is not ripe for ruling at this time since the underlying action has not yet been resolved.