STATE STREET BANK AND TRUST COMPANY OF QUINCY, ILLINOIS, Plaintiff-Appellant, v. INA INSURANCE COMPANY OF ILLINOIS, Defendant-Appellee.

Fourth District   No. 4—90—0245

Opinion filed February 6, 1991.—Rehearing denied March 4, 1991.

Keefe, Gorman & Brennan, of Quincy (Jerry L. Brennan, of counsel), for appellant.

Heyl, Royster, Voelker & Allen, of Peoria, and Heyl, Royster, Voelker & Allen, of Springfield (Karen L. Kendall, Frederick P. Velde, and Kurt M. Koepke, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:
This is another in a series of appeals arising out of John O'Brien's

litigation against plaintiff State Street Bank and Trust Company (State Street). In this appeal, State Street seeks reversal of a circuit court order which, in effect, held defendant INA Insurance Company of Illinois (INA) did not have a duty to defend O'Brien's lawsuit against State Street. We affirm.

O'Brien sued State Street in November 1975, alleging he was a business loan customer of State Street and that, on previous occasions, State Street had acquiesced in late payments on his loans. O'Brien further alleged that in November 1971, when one of O'Brien's debts to State Street was past due, an officer of State Street advised O'Brien to enter a hospital for a rest and told him if necessary, he would assist and advise O'Brien's employees during his absence. However, during O'Brien's hospitalization, State Street allegedly (1) accelerated the due dates of all of O'Brien's debts and obligations to it; (2) offset and seized various amounts which O'Brien had on deposit at State Street; (3) seized corn from O'Brien's business facilities and hogs from O'Brien's farm; and (4) confessed judgment on various of O'Brien's promissory notes which it held. O'Brien alleged these actions violated sections 1—103, 1—201(19), 1—203, 1—208, 9—503, and 9—507 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1969, ch. 26, pars. 1—103, 1—201(19), 1—203, 1—208, 9—503, 9—507). According to O'Brien's complaint, these actions destroyed O'Brien's financial standing, the goodwill of O'Brien's businesses, and his ability to obtain credit. O'Brien further claimed State Street's actions reduced his net worth from approximately $100,000 to zero. O'Brien also alleged, as a result of a petition filed by State Street and other creditors, an involuntary adjudication of bankruptcy was entered against him on June 29, 1972.

In count I of his complaint, O'Brien asserted State Street committed the violations of the UCC mentioned therein "willfully, wantonly, intentionally, maliciously, recklessly and in bad faith." In count II, O'Brien alleged these actions were committed "negligently and carelessly and in bad faith."

In 1980, this court held count I of O'Brien's complaint stated a cause of action for intentional interference with O'Brien's business relationships, while count II attempted to state a cause of action for negligent interference with O'Brien's business relationships. This court reversed a portion of a circuit court order which dismissed count I and affirmed the portion of the same order which dismissed count II. *O'Brien v. State Street Bank & Trust Co.* (1980), 82 Ill. App. 3d 83, 401 N.E.2d 1356.

Following extensive discovery, the circuit court entered summary judgment in favor of State Street as to count I. This court affirmed that

order on March 10, 1986 (*O'Brien v. State Street Bank & Trust Co.* (1986), 140 Ill. App. 3d 1151 (unpublished order under Supreme Court Rule 23)), and the supreme court denied O'Brien's petition for leave to appeal (*O'Brien v. State Street Bank & Trust Co.* (1986), 112 Ill. 2d 579).

After the conclusion of the litigation involving O'Brien, State Street sought reimbursement from United States Fidelity and Guaranty Company (USF&G) of the expenses, costs, and attorney fees which it incurred in defending O'Brien's suit, under terms of a banker's fidelity bond which USF&G issued to State Street. In *State Street Bank & Trust Co. v. United States Fidelity & Guaranty Co.* (1989), 181 Ill. App. 3d 1081, 539 N.E.2d 779, this court affirmed a summary judgment order which the circuit court entered in USF&G's favor.

On March 30, 1987, State Street commenced the present action by filing a complaint against INA. State Street's amended complaint, filed July 8, 1987, alleges that on or about November 1, 1971, it was insured under an "Office Building Policy" issued by INA. The complaint further alleges State Street tendered the defense of O'Brien's suit to INA, INA refused to defend the suit, and O'Brien's claims were within or potentially within the coverage of the policy which INA issued to State Street. In count I, State Street requests (1) damages consisting of all amounts which it expended in the defense of O'Brien's lawsuit, (2) prejudgment interest, and (3) costs incurred in the present action. In count II, State Street requests an award of taxable costs, as defined in section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767), on the basis INA's failure to defend was "vexatious and unreasonable," and, thus, in violation of section 155.

On September 21, 1987, the circuit court denied INA's motion to dismiss State Street's amended complaint. State Street filed a motion for summary judgment on August 4, 1988, and INA filed a cross-motion for summary judgment on October 11, 1989.

Attached to an affidavit filed in support of State Street's motion for summary judgment is a copy of the terms of an "office building policy" which INA issued to State Street. The policy provides in pertinent part:

> "The Company will pay on behalf of the Insured, except as hereafter provided, all sums which the Insured shall become legally obligated to pay as damages because of:
> A—PERSONAL INJURY or
> B—PROPERTY DAMAGE
> caused by an occurrence during the policy period and within the policy territory.
> * * *

2. 'Bodily injury' means bodily injury, sickness or disease sustained by any person;

* * *

11. 'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage neither expected nor intended from the standpoint of the insured;

12. 'Personal injury' means bodily injury or if arising out of bodily injury, mental anguish. It also includes injury arising out of one or more of the following offenses:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting, publishing, or telecasting activities conducted by or on behalf of the Named Insured;

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

* * *

15. 'Property damage' means injury to or destruction of tangible property."

The "exclusions" section of the policy applicable to liability insurance provides:

"[I]nsurance shall not apply * * *

1. With respect to:

* * *

n. personal injury or property damage due to:

(1) the rendering of or failure to render

(a) medical, surgical, dental, X-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

(b) any service or treatment conducive to health or of a professional nature;

(c) any cosmetic, tonsorial, massage, physiotherapy, chiropody, hearing aid, optical or optometrical services or treatments;

(d) any professional service * * *."

On March 15, 1990, the circuit court entered summary judgment in favor of INA. The court held O'Brien's complaint did not contain

allegations which brought his claims potentially within the coverage of the policy which INA issued to State Street. In the court's view, "the inevitable result of the Bank's purposeful actions [alleged in O'Brien's complaint] was the harm which occurred to Mr. O'Brien." Because, from State Street's perspective, the damages which O'Brien allegedly sustained were "not unusual, unforeseen, or unexpected," the court concluded State Street's alleged actions and the consequences thereof were not an "occurrence" within the coverage of the policy.

In appealing this decision, State Street argues since O'Brien's complaint alleged negligent acts which destroyed his businesses, and did not allege the resulting damages were intended or expected from State Street's viewpoint, the circuit court erred in holding there was no "occurrence" within the meaning of the policy which INA issued to State Street. State Street points out O'Brien's complaint did not allege State Street intended to destroy O'Brien's businesses and bankrupt him. State Street suggests it is not inevitable that, every time a bank acts to protect its loans, the borrower's businesses will be destroyed, and the borrower will be bankrupted. State Street contends the circuit court, in reaching its decision, did not consider whether there was a possibility State Street did not expect the damages its actions allegedly caused to O'Brien.

State Street further argues there is an incompatibility between the policy coverage for torts such as defamation, malicious prosecution, and wrongful entry, which involve malicious or intentional conduct, and the general exclusion of coverage for intended or expected damages contained in the definition of "occurrence." State Street maintains either (1) with respect to the tortious actions specified under the definition of "personal injury," the definition of "occurrence" must be ignored, or (2) there is no coverage for the torts specifically described under the definition of "personal injury."

State Street further argues the damages allegedly sustained by O'Brien were potentially within the definition of "personal injury." State Street maintains the alleged wrongful seizure of corn and hogs from real estate belonging to O'Brien potentially amounted to "wrongful entry" or "other invasion of the right of private occupancy" of O'Brien's real estate by State Street.

INA asserts the circuit court correctly concluded O'Brien's complaint did not even potentially allege an occurrence which would have been covered by the policy. INA states the damages which O'Brien allegedly sustained were not an "accident" for purposes of determining whether there was an "occurrence" within the meaning of the policy, but instead State Street reasonably should have anticipated O'Brien's

alleged damages would result from the allegedly wrongful acts it committed.

INA further asserts O'Brien's complaint did not contain allegations of "personal injury" consisting of either wrongful entry or eviction. INA also argues O'Brien did not allege "property damage" within the meaning of the policy it issued to State Street, since liability coverage for property damage is clearly and unambiguously limited to "injury to or destruction of tangible property." INA asserts "tangible property" does not include anticipated profits, financial interests in business ventures, or business relationships.

■■ In *Western Casualty & Surety Co. v. Adams County* (1989), 179 Ill. App. 3d 752, 756-57, 534 N.E.2d 1066, 1068, this court recently summarized the principles applicable to determining whether an insurer has an obligation to defend a lawsuit brought against an insured:

"In Illinois, an insurer['s] duty to defend an action against its insured is determined by the allegations of the complaint. An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.] The duty to defend is much broader than the duty to indemnify. [Citations.] The duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured even if only one or some of them are within the policy coverage. [Citation.] Unless the complaint on its face clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend. [Citation.] 'Potentially covered' means that the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the possibility of a recovery under the policy. There need not be a probability of recovery. [Citations.] The complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action. [Citation.]

If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written and the parties should be bound to the agreement they made. [Citation.] The complaint against the insured must be liberally construed. Any doubts about potential coverage are

to be resolved in the insured's favor."

When the underlying complaint sets forth claims potentially within the coverage of an insurance policy, the insurer must either defend under a reservation of rights or seek a declaratory judgment that there is no coverage. Failure to do this estops the insurer from later raising policy defenses to coverage. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079.) When, however, a comparison of the insurance policy and the underlying complaint reveals there is clearly no coverage, and the claims in the underlying complaint thus are not potentially within the coverage of the policy, the insurer is never estopped from asserting policy defenses in an action seeking damages based on its alleged wrongful refusal to defend. *Estes Co. v. Employers Mutual Casualty Co.* (1980), 79 Ill. 2d 228, 402 N.E.2d 613; *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 408 N.E.2d 928.

We hold the circuit court correctly entered summary judgment in favor of INA. However, we affirm the circuit court's order on grounds different from those on which the court relied. See *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457 N.E.2d 9; *Computer Teaching Corp. v. Courseware Applications, Inc.* (1989), 191 Ill. App. 3d 203, 547 N.E.2d 718.

■■ The insurance policy at issue is an "office building policy." Insurance policies of this type are intended to cover losses arising out of building ownership or occupancy. (*American Fellowship Mutual Insurance Co. v. Insurance Co. of North America* (1979), 90 Mich. App. 633, 282 N.W.2d 425.) The policy at issue excludes liability coverage for personal injury or property damage due to the insured's rendering of or failure to render "any professional service." In construing exclusions such as this, courts have adopted an expansive definition of the term "professional service." The term is not limited to services performed by persons who must be licensed by a governmental authority in order to practice their professions. Rather, it refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature. *American Fellowship Mutual Insurance*, 90 Mich. App. 633, 282 N.W.2d 425; *Multnomah County v. Oregon Automobile Insurance Co.* (1970), 256 Or. 24, 470 P.2d 147.

■■ O'Brien's claims against State Street were not in any way directly related to its ownership or occupancy of the office building which was insured by the policy which INA issued to State Street. Instead, O'Brien's claims arose from State Street's exercise of its business judgment in conducting its principal business activity. O'Brien's

claims were thus premised on State Street's rendering or failure to render a professional service, and there was no potential for coverage of his claims under the policy at issue. INA, therefore, had no duty to defend O'Brien's lawsuit against State Street.

Because of our decision, we need not address the parties' remaining contentions.

The circuit court order entering summary judgment in INA's favor is affirmed.

Affirmed.

LUND, P.J., and GREEN, J., concur.