FIRST DIVISION
August 13, 2007

No. 1-06-0415

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, | ) Appeal from<br>) the Circuit Court<br>) of Cook County |
| Plaintiff-Appellee, | ) |
| v. | ) |
| | ) |
| BRISEIS KILFOY, | ) No. 04 CH 12414 |
| | ) |
| Defendant-Appellant | ) |
| | ) |
| (Nikash, Inc., a Dissolved Corporation, formerly d/b/a Clear Choice Laser Eye Center; Stuart P. Sondheimer; and Miriam Weller, | )<br>)<br>) Honorable |
| | ) William O. Maki, |
| Defendants). | ) Judge Presiding. |

JUSTICE CAHILL delivered the opinion of the court:

Defendant Briseis Kilfoy appeals a trial court order granting summary judgment to plaintiff National Fire Insurance Company of Hartford (National) in its suit for declaratory judgment. The trial court held National did not owe a duty to indemnify or defend its insured Nikash, Inc. (Nikash), a dissolved corporation formerly doing business as Clear Choice Laser Eye Center (Clear Choice), against Kilfoy's underlying medical malpractice and negligent hiring complaint. That complaint named as defendants Nikash, Clear Choice, Stuart P. Sondheimer, M.D., and Miriam Weller, O.D. (collectively, the underlying defendants). At issue was whether the

allegations giving rise to Kilfoy's negligent hiring claim trigger the "professional services" exclusion of the National policy. We agree with the trial court that they do: the allegations charged Nikash with hiring doctors unqualified to render medical services. Such allegations assume that Nikash exercised specialized knowledge and skill by its ability to recognize the competency or incompetency of a medical professional. We affirm.

Before dissolution, Nikash conducted a business known as Clear Choice. Clear Choice specialized in outpatient LASIK eye surgery. Nikash hired Dr. Sondheimer as an independent contractor to perform LASIK surgeries for Clear Choice. Nikash also hired Dr. Weller as an independent contractor to perform preoperative evaluations and postoperative care for Sondheimer's patients.

Kilfoy, who was farsighted, went to Clear Choice in April 2002 and met with Dr. Weller. Weller told Kilfoy she was not certain whether LASIK surgery could correct farsightedness and would consult with Dr. Sondheimer. Sondheimer told Weller to perform a complete evaluation of Kilfoy and that he would determine, based on the evaluation, whether surgery was appropriate. Weller did not relate her conversation with Sondheimer to Kilfoy. Rather, Weller told Kilfoy she was a good candidate for LASIK surgery, performed a complete preoperative evaluation and scheduled the surgery. The surgery took place on May 17, 2002. Sondheimer did not perform his own evaluation of Kilfoy before performing the surgery. Nor did he explain the limited benefits of the surgery to farsighted patients and the risks involved.

Kilfoy alleged she suffered injury to her left eye as a result of the surgery and filed a three-count complaint against the named defendants in April 2003. Kilfoy maintained she would not

have gone forward with the surgery had she been made aware of the risks and limited benefits. Kilfoy alleged in count I of her complaint that Nikash was negligent in creating a comanagement scheme to run Clear Choice. Kilfoy maintained the roles of Dr. Sondheimer and Dr. Weller were not clearly defined and that, as a result, Weller evaluated and advised patients who should have been evaluated and advised by Sondheimer. Kilfoy alleged Nikash was negligent in: (1) failing to structure and manage Clear Choice to assure that LASIK patients received "sound" preoperative advice; (2) failing to distinguish between the responsibilities of Sondheimer and Weller; (3) allowing Weller to advise patients without first obtaining Sondheimer's approval; (4) causing Sondheimer to believe Weller was qualified to advise LASIK patients; (5) causing Sondheimer to believe LASIK patients had been properly advised by Weller; (6) scheduling surgeries in such a manner to discourage patients from seeking additional preoperative advice from Sondheimer; (7) failing to require written consent by patients; and (8) failing to establish an oversight process to assure quality service. Counts II and III alleged negligence against Sondheimer and Weller, respectively.

Kilfoy learned during discovery in the underlying action that Nikash had general liability business insurance coverage through National during the period in which Kilfoy alleged negligence. Kilfoy forwarded a copy of her complaint to National on April 21, 2004.

National filed this action in August 2004 against the underlying defendants and Kilfoy. National sought a declaratory judgment that it did not owe a duty to defend or indemnify the underlying defendants against Kilfoy's complaint because the allegations did not invoke coverage. Dr. Sondheimer conceded he was not entitled to coverage and a default judgement was entered

3

against Dr. Weller. Whether National owed a duty to defend and/or indemnify Sondheimer and Weller against the underlying lawsuit is not at issue in this appeal. We are concerned only with whether National owed a duty to defend Nikash.

National argued in the trial court that, under the policy's "professional services" exclusion, Nikash was not entitled to coverage against Kilfoy's underlying allegations of negligence. That provision reads:

"This insurance does not apply to:

* * *

j. Professional Services

'Bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' due to rendering or failure to render any professional service. This includes but is not limited to:

***

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory *** services;

(4) Medical, surgical *** or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

4

\*\*\*

(7) Optometry or optical \*\*\* services \*\*\*."

National moved for summary judgment on the ground that the underlying allegations fell within the scope of the professional services exclusion. Alternatively, National argued Nikash was not entitled to coverage because it failed to comply with the policy's notice provisions. The trial court granted the motion, relying on the professional services exclusion in the policy.

In response to the trial court's ruling, Kilfoy amended her complaint in the underlying action in an attempt to allege facts that would not trigger the professional services exclusion. Kilfoy alleged:

"Nikash, Inc., by its servants and agents, was careless and negligent in hiring [Dr. Weller] as an independent contractor to be a comanager of Clear Choice along with [Dr. Sondheimer] as the other comanager, in that Nikash, Inc.:

a) failed to conduct a job interview of Dr. Weller that was sufficient to ascertain whether her prior experience with and knowledge of LASIK surgery on farsighted patients qualified her to carry out the responsibilities of being a comanager of Clear Choice, including but not limited to the responsibility to screen farsighted patients to evaluate their candidacy for LASIK surgery and to advise farsighted patients as to the risks and benefits of LASIK surgery[;]

b) failed to request Dr. Sondheimer to evaluate whether Dr. Weller was qualified to carry out the responsibilities of being a comanager of Clear

5

Choice, including but not limited to the responsibility to screen farsighted

patients to evaluate their candidacy for LASIK surgery and to advise

farsighted patients as to the risks and benefits of LASIK surgery[;]

      c) in hiring Dr. Weller to be a comanager of Clear Choice, it hired

an optometrist who was not qualified to carry out the responsibilities of

being a comanager of Clear Choice, including but not limited to the

responsibility to screen farsighted patients to evaluate their candidacy for

LASIK surgery and to advise farsighted patients as to the risks and benefits

of LASIK surgery.

The amendment also included language alleging Nikash was "negligent in its hiring,

*administrative* supervision, and *business* operation of Clear Choice." (Emphasis in original.)

Kilfoy filed a motion in the declaratory judgment case to reconsider the granting of

summary judgment for National based on the amendments to the underlying complaint. Kilfoy

argued the underlying action now included allegations of negligent hiring that were not excluded

from coverage under the professional services provision of the policy. The trial court denied the

motion to reconsider and this appeal followed.

Summary judgment is proper when the pleadings, depositions, admissions and affidavits

on file, when viewed in the light most favorable to the nonmoving party, reveal there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 315, 821 N.E.2d 269 (2004).

We review a grant of summary judgment *de novo* and may affirm on any ground appearing in the

6

record. Home Insurance Co., 213 Ill. 2d at 315.

We are asked to decide whether the allegations contained in Kilfoy's underlying complaint are sufficient to invoke coverage under the National policy. If so, National would owe a duty to defend and, possibly, indemnify Nikash against the underlying action. If not, National owes no such duty and summary judgment in its favor should be affirmed.

The determination of rights and obligations under an insurance policy is a question of law for the court to decide. Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993). In construing an insurance policy, the court must ascertain and give effect to the intentions of the parties as expressed by the language in the policy. Crum & Forster, 156 Ill. 2d at 391. The court must look at the policy as a whole, taking into account the type of insurance, the risks undertaken and purchased, the subject matter insured and the purposes of the entire contract. Crum & Forster, 156 Ill. 2d at 391. If the words in the policy are plain and unambiguous, the policy will be applied as written unless it contravenes public policy. Crum & Forster, 156 Ill. 2d at 391. "Conversely, if the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." American States Insurance Co. v. Koloms, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997). "Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and against the insurer." State Farm Mutual Automobile Insurance Co. v. Villicana, 181 Ill. 2d 436, 442, 692 N.E.2d 1196 (1998).

In deciding whether an insurer has a duty to defend its insured, the court must compare the allegations in the underlying complaint to the relevant coverage provisions of the insurance

7

policy. Crum & Forster, 156 Ill. 2d at 393. "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action." Crum & Forster, 156 Ill. 2d at 393. An insurer's duty to defend is much broader than its duty to indemnify. Crum & Forster, 156 Ill. 2d at 393-94. If there is no duty to defend, there can be no duty to indemnify. Crum & Forster, 156 Ill. 2d at 398.

Kilfoy contends National owes a duty to defend and indemnify Nikash against her underlying negligent hiring claim because hiring is not a "professional service." Kilfoy cites American Family Mutual Insurance Co. v. Enright, 334 Ill. App. 3d 1026, 781 N.E.2d 394 (2002). The insured there employed an ultrasound technician who sexually molested a minor while performing an ultrasound examination. Enright, 334 Ill. App. 3d at 1028. The victim filed a negligent hiring claim against the insured, alleging the insured breached a duty to exercise ordinary and reasonable care and was negligent when it failed to adopt appropriate administrative review or to conduct adequate preemployment screening and reference verification. Enright, 334 Ill. App. 3d at 1030. The medical malpractice insurer filed a separate action, seeking declaratory judgment that it had no duty to defend or indemnify the insured or its employee against the victim's underlying complaint. Enright, 334 Ill. App. 3d at 1028. At issue was whether the insured's failure to conduct a criminal background check before hiring the employee constituted a failure to render "professional services" within the meaning of the policy. Enright, 334 Ill. App. 3d at 1034. The court held the insured's failure to perform a criminal background check before hiring its employee did not involve "professional services" because no professional training, skill,

experience or knowledge was required in taking such administrative precautions. Enright, 334 Ill. App. 3d at 1035, citing Pekin Insurance Co. v. L.J. Shaw & Co., 291 Ill. App. 3d 888, 892, 684 N.E.2d 853 (1997).

National argues Enright is distinguishable because the allegations giving rise to Kilfoy's negligent hiring claim do not involve a failure to take administrative precautions. National argues Kilfoy's allegations of negligent hiring implicate Nikash's failure to employ specialized knowledge and skill to ensure prospective employees are qualified to render medical services. National relies on Pekin, where the term "professional services" was defined in this context as "any business activity conducted by the insured that involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual." Pekin, 291 Ill. App. 3d at 892, citing State Street Bank & Trust Co. v. INA Insurance Co., 207 Ill. App. 3d 961, 567 N.E.2d 42 (1991). National maintains "the determination that an optometrist or an ophthalmologist is competent is a professional service because it involves specialized knowledge and skill and is a predominantly mental or intellectual endeavor."

National's argument finds support in State Street. The insurer there argued it did not owe a duty to defend its insured bank against an underlying lawsuit that alleged the bank was negligent by collecting on a defaulted loan. State Street, 207 Ill. App. 3d at 967. The policy covered claims arising out of the insured's ownership and occupancy of an office building and excluded coverage for injury due to the insured's rendering or failure to render " 'any professional service.' " State Street, 207 Ill. App. 3d at 967. The court found the term "professional service" has an expansive meaning within the context of business liability insurance contracts. State Street, 207

9

Ill. App. 3d at 967.

> "The term is not limited to services performed by persons who must be licensed by a governmental authority in order to practice their professions. Rather, it refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature." State Street, 207 Ill. App. 3d at 967.

The court held the insured's decision to enforce its right to collect was a "professional service" because it involved the exercise of business judgment in conducting the insured's principal business activity: banking. State Street, 207 Ill. App. 3d at 967-68.

Kilfoy's complaint alleged Nikash was negligent because it failed to assess Dr. Weller's qualifications to advise and screen farsighted patients and determine their candidacy for LASIK surgery. Kilfoy's complaint also alleged Nikash was "negligent in its hiring, *administrative* supervision, and *business* operation of Clear Choice." (Emphasis in original.) These allegations go to the heart of Nikash's principal business operation and the way in which Nikash exercises business judgment. Unlike performing an administrative act, the determination of whether a physician is qualified to render professional services requires specialized knowledge and skill. So too does the operation and management of a surgical facility.

The judgment of the circuit court is affirmed. We need not consider the reasonableness of National's notice as an alternative ground for affirmance.

Affirmed.

McBRIDE, P.J., and R.E. GORDON, J., concur.

10