2024 IL App (4th) 230738

NO. 4-23-0738

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 18, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ALLIED DESIGN CONSULTANTS, INC., | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| PEKIN INSURANCE COMPANY; AMANDA | ) | No. 19MR663 |
| FERGUSON, Individually and as Mother and Next Friend | ) | |
| of C.A., a Minor; FRED C. MULACEK; SARA FLOYD; | ) | |
| THOMAS M. KAZENSKI, Individually and as Father and | ) | |
| Next Friend of K.L.K., a Minor; DEBRA OCHU; | ) | |
| DONNA MOYER, Individually and as Mother and Next | ) | |
| Friend of A.R., a Minor; JEFFREY D. LORTON, | ) | |
| Individually and as Father and Next Friend of S.D.L., a | ) | |
| Minor; MONICA HASARA; MARC BAKER and AMY | ) | |
| BAKER, Individually and as Parents and Next Friends of | ) | |
| S.B., a Minor; KATHY YEMM, Individually and as | ) | |
| Mother and Next Friend of K.E.Y., a Minor; KRISTIAN | ) | |
| R. ELDRIDGE; ROBERT D. HARVEY and KATRINA | ) | |
| HARVEY, Individually and as Parents and Next Friends | ) | |
| of C.M.H., a Minor; CHRISTIAN M. SMITH; JEREMY | ) | |
| TUNE, Individually and as Father and Next Friend of J.E., | ) | |
| a Minor; TRUDY BERNSTEIN, Individually and as | ) | |
| Mother and Next Friend of C.M.B., a Minor; MICKY | ) | |
| SUE CODY, as Guardian of the Estate of G.M.K.T., a | ) | |
| Minor; LARRY D. LAIR, Individually and as Father and | ) | |
| Next Friend of L.L., a Minor; JESSICA SMITH, | ) | |
| Individually and as Mother and Next Friend of B.S., a | ) | |
| Minor; MONICA FULTON, as Mother and Next Friend | ) | |
| of G.F., a Minor; AMY TURLEY, as Mother and Next | ) | |
| Friend of D.J., a Minor; GEORGIE M. BREWER, as | ) | |
| Guardian of the Estate and Person of A.D.T., a Minor; | ) | |
| NICHOLAS RYAN GORMAN; and EMILY RENEA | ) | Honorable |
| SHARP, | ) | Gail L. Noll, |
|     Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Steigmann and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1        After a September 15, 2014, carbon monoxide leak in a 2003 building addition to a middle school, 23 personal injury lawsuits were filed against plaintiff, Allied Design Consultants, Inc. (Allied), who had been retained to perform certain architectural services relating to the building addition. Defendant, Pekin Insurance Company (Defendant Insurer), had issued Allied a businessowners liability insurance policy (Businessowners Policy) and a commercial umbrella liability policy (Umbrella Policy). Defendant Insurer denied it owed Allied a duty to defend in the underlying lawsuits because the allegations fell under the policies' professional services exclusions.

¶ 2        In September 2019, Allied filed a complaint for declaratory relief against Defendant Insurer seeking a declaration defendant had a duty to defend and was obligated to indemnify Allied to the extent it was legally liable for damages, which were covered under the insurances policies and not within the scope of the insurance policies' professional services exclusions. Allied later filed a first amended complaint, which added the plaintiffs in the underlying suits as defendants in this case. Those defendants were the following: Amanda Ferguson, individually and as mother and next friend of C.A., a minor; Fred C. Mulacek; Sara Floyd; Thomas M. Kazenski, individually and as father and next friend of K.L.K., a minor; Debra Ochu; Donna Moyer, individually and as mother and next friend of A.R., a minor; Jeffrey D. Lorton, individually and as father and next friend of S.D.L., a minor; Monica Hasara; Marc and Amy Baker, individually and as parents and next friends of S.B., a minor; Kathy Yemm, individually and as mother and next friend of K.E.Y., a minor; Kristian R. Eldridge; Robert D. and Katrina Harvey, individually and as parents and next friends of C.M.H., a minor; Christian M. Smith; Jeremy Tune, individually and as father and next friend of J.E., a minor; Trudy Berstein, individually and as mother and next friend of C.M.B., a

minor; Micky Sue Cody, as guardian of the estate of G.M.K.T., a minor; Larry D. Lair, individually and as father and next friend of L.L., a minor; Jessica Smith, individually and as mother and next friend of B.S., a minor; Monica Fulton, as mother and next friend of G.F., a minor; Amy Turley, as mother and next friend of D.J., a minor; Georgie M. Brewer, as guardian of the estate and person of A.D.T., a minor; Nicholas Ryan Gorman; and Emily Renea Sharp. The first amended complaint also contained additional counts, for a total of six counts. Defendant Insurer filed a four-count counterclaim, seeking a declaratory judgment it had no duty to defend.

¶ 3 On defendant's motion, the Sangamon County circuit court dismissed without prejudice count V of Allied's amended complaint. The parties then filed cross-motions for summary judgment, and the court granted summary judgment in favor of Defendant Insurer on counts I through IV of Allied's amended complaint and counts II and III of Defendant Insurer's counterclaim. Thereafter, Allied filed a motion to voluntarily dismiss count VI, and the court entered a final judgment in favor of Defendant Insurer.

¶ 4 Allied appeals, contending Defendant Insurer owed it a duty to defend and Defendant Insurer breached that duty. Specifically, Allied asserts the circuit court erred (1) by failing to examine each of the alleged acts in the underlying lawsuits to determine whether they fell outside the professional services exclusion and (2) in finding the underlying lawsuits arose solely out of Allied's activity of conducting the health/life safety survey and the preparation of that survey. We affirm.

¶ 5 I. BACKGROUND

¶ 6 A. Parties' Stipulation of Facts

¶ 7 With their cross-motions for summary judgment, the parties submitted a joint stipulation of facts.

¶ 8                                    1. *Underlying Lawsuits*

¶ 9          Allied attached the complaints for the underlying lawsuits to its first amended complaint. For the purposes of discovery, the underlying lawsuits were consolidated in Hasara v. North Mac Community Unit School District No. 34, No. 16-L-13 (Cir. Ct. Macoupin County), which remains pending. Each underlying lawsuit generally alleges the same facts in connection with their claims against Allied. The parties agreed the allegations in the personal injury complaint filed by Ferguson (hereinafter Ferguson Complaint) are typical and representative of the allegations in the other 22 underlying lawsuits.

¶ 10         The general allegations of the Ferguson Complaint stated a construction project was undertaken at the middle school in or about 2001, 2002, and 2003. Allied entered into a written agreement with the school district to " 'perform certain professional architecture services' relating to the school addition, 'including the design of certain mechanical systems.' " By the end of March 2003, the addition to the school was constructed and contained mechanical systems " 'designed and/or constructed by' " Allied and another business, which included " 'domestic hot water heaters, hot water boilers and an air handling unit located in a mechanical room along with the venting systems appurtenant thereto.' "

¶ 11         Count IV of the Ferguson Complaint set forth a negligence claim against Allied. That count stated, on September 15, 2014, Allied " 'conducted a business that included the practice of architecture' " and was registered as a "Design Firm" with the State of Illinois. Count IV alleged, in or about November and December 2005, Allied engaged in the practice of architecture in providing certain professional services relating to part 180 of Title 23 of the Illinois Administrative Code, known as "Health/Life Safety Code for Public Schools" (Safety Code) (see 23 Ill. Adm. Code 180.310 (2005)), to the school district. "[O]n 'November 16, 17 and 18, 2005,'

Allied, 'by and through its employee and architect, William VanDusen, performed a Health/Life Safety Survey' " of the school buildings, including the 2003 school addition, and " 'generated a Health/Life Safety Survey Report' " from that survey. In November and December 2005, Allied owed duties to C.A., which included the following:

"duties under the Illinois Architecture Practice Act of 1989; duties under the [Safety Code]; 'duties pursuant to the public policy of the State of Illinois; a duty to perform its work in a good and workmanlike manner and in accordance with industry standards, customs, and practice; and a common law duty of ordinary care, and each of them, so as not to cause injury to persons lawfully upon the premises of' the school addition."

¶ 12    Count IV further alleged Allied breached one or more of its duties of care to C.A., through one or more of the following acts or omissions:

" '(a) negligently and carelessly failed to properly and adequately perform a Health/Life Safety Survey of the [building addition] using the applicable codes and standards;

(b) negligently and carelessly failed to discover and/or report that the domestic hot water heaters and their vent system were not in accordance with their manufacturer's installation and service instructions, contrary to and in violation of the [Safety Code] ***[;]

(c) negligently and carelessly failed to inform or warn others of the unsafe and dangerous conditions existing in and about the [school addition], including the vent system for the aforesaid hot water heaters;

(d) negligently and carelessly failed to properly and adequately repair or

- 5 -

otherwise remedy the unsafe and dangerous conditions of the mechanical systems within the [school addition];

(e) negligently and carelessly failed to follow the instructions, directions, recommendations, and/or warnings published by Lochinvar, LLC, the manufacturer of aforesaid hot water heaters, relating to their proper and safe operation and the proper and safe venting of exhaust gases therefrom; and/or

(f) otherwise negligently and carelessly failed to provide proper, adequate and safe professional services in its practice of architecture in particular manners to be determined through discovery in this action.' "

Last, count IV asserted, as a direct and proximate result of the aforesaid breach of one or more of its duties of care by Allied, the combustion exhaust vent pipe for the domestic water heaters was caused to and did separate resulting in an uncontrolled leak of carbon monoxide gas within the school addition on September 15, 2014, which caused serious and permanent injuries to C.A.'s person.

¶ 13                                  2. *Businessowners Policy*

¶ 14          Defendant Insurer issued Businessowners Policy No. 00BU12903-Y to Allied for the period of March 1, 2014, to March 1, 2015. The Businessowners Policy provided businessowners liability insurance coverage with limits of $1 million per occurrence and $2 million in the aggregate. Section A of the Businessowners Policy addressed coverages and provided, in pertinent part, the following:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty

- 6 -

to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result."

The policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Businessowners Policy contained a professional services exclusion, which provided the Businessowners Policy did not apply, in pertinent part, to the following:

"j. 'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' due to rendering and failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting, or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services[.]"

¶ 15                              3. *Umbrella Policy*

¶ 16          Defendant Insurer also issued commercial Umbrella Policy No. CU09198-X to Allied for the period of March 1, 2014, to March 1, 2015. The Umbrella Policy provided limits of $1 million per occurrence and in the aggregate, with a self-insured retention of $10,000. The Umbrella Policy provided, in pertinent part, the following: "We will pay our part of the 'ultimate net loss' which the insured legally must pay as damages because of 'injury' caused by an 'occurrence' to which this insurance applies." It contained an exclusion for "[a]ny damages because of 'professional liability.' " The Umbrella Policy defines "professional liability" as the

"legal liability for damages due to the rendering of or failure to render any professional service, in the practice of the insured's profession, by the insured or any person acting under the insured's direction, control or supervision." It goes on to provide a nonexclusive list of professions, which included "[a]rchitects, engineers, surveyors, or draftsmen."

¶ 17                              B. Circuit Court Proceedings

¶ 18        In November 2019, Allied filed its first amended complaint, which was the subject of the circuit court's final judgment. Count I of the first amended complaint sought a declaration Defendant Insurer had a duty to defend Allied under the Businessowners Policy in the underlying lawsuits, and count II asserted Defendant Insurer breached its duty to defend Allied under the Businessowners Policy. Count III sought a declaration Defendant Insurer had a duty to defend Allied under the Umbrella Policy in the underlying lawsuits, and count IV asserted Defendant Insurer breached its duty to defend Allied under the Umbrella Policy. Count V requested a declaration defendant was obligated to indemnify Allied under both insurance policies to the extent Allied is legally liable for damages covered under the policies and not within the scope of the policies' professional exclusions. Last, count VI alleged defendant violated section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)). Defendant Insurer filed a motion to dismiss Allied's first amended complaint. On June 30, 2021, the circuit court entered an order denying the motion to dismiss, except for count V. The court dismissed without prejudice count V, finding that count was premature.

¶ 19        Thereafter, Defendant Insurer filed an answer to the first amended complaint and a counterclaim for declaratory judgment. Count I of the counterclaim asserted Defendant Insurer was entitled to a declaration it had no duty to defend Allied on the basis Allied breached the policy's notice of occurrence condition because it did not notify Defendant Insurer until almost

- 8 -

five years after the occurrence. Count II alleged Defendant Insurer was entitled to a declaration it had no duty to defend Allied on the basis the professional services exclusion of the Businessowners Policy applies to the claims raised in the underlying lawsuits. Count III contended Defendant Insurer was entitled to a declaration it had no duty to defend Allied because the professional exclusion provision of the Umbrella Policy applies to the claims raised in the underlying lawsuits. Count IV alleged Defendant Insurer was entitled to a declaration it had no duty to defend Allied on a targeted or other basis under the Businessowners Policy.

¶ 20 Allied and Defendant Insurer filed cross-motions for summary judgment. In its motion for summary judgment, Defendant Insurer argued it was entitled to summary judgment in its favor on counts I through IV of the first amended complaint and counts II and III of its counterclaim. In its motion, Allied contended it was entitled to a summary judgment on counts I and II of its first amended complaint. Allied presented several exhibits in support of its motion for summary judgment. In conjunction with their cross-motions for summary judgment, the parties submitted a stipulation of facts. The parties filed responsive pleadings.

¶ 21 On July 7, 2023, the circuit court entered a written order granting Defendant Insurer's motion for summary judgment as to counts I through IV of the first amended complaint and counts II and III of Defendant Insurer's counterclaim. The court denied Allied's motion for summary judgment as to counts I and II of its first amended complaint. In its lengthy and well-written order, the court explained the underlying lawsuits failed to allege "any facts which would fall outside or even potentially fall outside the professional services exclusion of the [Businessowners Policy] and the professional liability exclusion of the Umbrella Policy."

¶ 22 Thereafter, Allied sought a dismissal without prejudice of count VI of its first amended complaint. On July 31, 2023, the circuit court entered a judgment in favor of Defendant

Insurer, noting it had found Defendant Insurer had no duty or obligation to defend Allied in the underlying lawsuits. The order stated it was "a final judgment which terminates this case." As such, the court's earlier dismissal of count V without prejudice became a dismissal with prejudice.

¶ 23 On August 29, 2023, Allied filed a timely notice of appeal from the circuit court's July 31, 2023, order in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 24                                     II. ANALYSIS

¶ 25 Allied appeals the circuit court's granting of summary judgment in favor of Defendant Insurer after the parties filed cross-motions for summary judgment. A court may grant summary judgment "when the pleadings, depositions, admissions, and affidavits, viewed in the light most favorable to the nonmovant, fail to establish that a genuine issue of fact exists, thereby entitling the moving party to judgment as a matter of law." *Iwan Ries & Co. v. City of Chicago*, 2019 IL 124469, ¶ 18, 160 N.E.3d 916 (citing 735 ILCS 5/2-1005(c) (West 2016)). "When, as here, parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that the case may be resolved as a matter of law." *Iwan Ries & Co.*, 2019 IL 124469, ¶ 18. We review the grant of summary judgment *de novo*. *Acuity v. M/I Homes of Chicago, LLC*, 2023 IL 129087, ¶ 20.

¶ 26                                   A. Duty to Defend

¶ 27 An insurer's duty to defend its insured is broader than its duty to indemnify. *Acuity*, 2023 IL 129087, ¶ 28. In determining whether an insurer has a duty to defend its insured from a lawsuit, courts compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy. *Acuity*, 2023 IL 129087, ¶ 28. "After liberally construing the allegations in

favor of the insured, if the facts alleged fall potentially within the policy's coverage, the insurer is obligated to defend its insured." *Acuity*, 2023 IL 129087, ¶ 28. The insurer must defend the insured, "even if the allegations are 'groundless, false, or fraudulent' and even if only one of several theories of recovery alleged in the complaint potentially falls within the coverage of the policy." *Acuity*, 2023 IL 129087, ¶ 29 (quoting *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006)). As such, "an insurer may not justifiably refuse to defend a lawsuit against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." (Internal quotation marks omitted.) *Acuity*, 2023 IL 129087, ¶ 29.

¶ 28    In construing the policy's language, courts apply the same rules applicable to contract interpretation. *Acuity*, 2023 IL 129087, ¶ 30. As such, the primary objective is to ascertain and give effect to the parties' intent, as expressed in the policy's language. *Acuity*, 2023 IL 129087, ¶ 30. If the policy's terms are clear and unambiguous, courts must give them their plain and ordinary meaning. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997). In addition, "provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer." *Koloms*, 177 Ill. 2d at 479.

¶ 29    In analyzing the duty to defend, courts first determine whether the allegations in the underlying lawsuit are potentially covered by the language of the insurance policy's initial grant of coverage. *Acuity*, 2023 IL 129087, ¶ 33. If it is evident the policy does not potentially cover the claim asserted, the analysis is complete, and the insurer has no duty to defend. If a claim potentially satisfies the initial grant of coverage, courts next examine the various relevant exclusions to determine if any of them limit coverage. *Acuity*, 2023 IL 129087, ¶ 33. If an exclusion applies, courts then look to see whether any exceptions to that exclusion would apply to

reinstate coverage. *Acuity*, 2023 IL 129087, ¶ 33. "Generally, the insured bears the burden of proving the claim is covered under the initial grant of coverage, and the insurer bears the burden of proving an exclusion applies." *Acuity*, 2023 IL 129087, ¶ 33. In this case, the circuit court found the allegations in the underlying lawsuits fell under the professional services exclusion of both insurance policies.

¶ 30                                B. Allegations in Underlying Lawsuit

¶ 31        The circuit court found Defendant Insurer had no duty to defend because none of the allegations in the underlying complaint fell outside, or even potentially outside, the professional service exclusions. On appeal, Allied contends the Ferguson Complaint does contain allegations not involving professional services. Specifically, Allied notes the Ferguson Complaint alleged negligent acts of failure to warn, maintain, repair, and follow the manufacturer's directions. Allied asserts those acts do not involve professional services.

¶ 32        In *State Street Bank & Trust Co. v. INA Insurance Co. of Illinois*, 207 Ill. App. 3d 961, 967, 567 N.E.2d 42, 47 (1991), this court addressed an office building insurance policy, which excluded "liability coverage for personal injury or property damage due to the insured's rendering of or failure to render 'any professional service.' " We noted courts had adopted an expansive definition of the term "professional service" in construing such exclusions. *State Street Bank*, 207 Ill. App. 3d at 967. The term is not limited to services performed by persons who must be licensed to practice their professions. *State Street Bank*, 207 Ill. App. 3d at 967. Rather, "professional service" means "any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature." *State Street Bank*, 207 Ill. App. 3d at 967.

¶ 33        On the facts before it, this court found the underlying claims of intentional and

negligent interference with business relationships against the plaintiff were not in any way directly related to the plaintiff's ownership or occupancy of the office building insured by the defendant. *State Street Bank*, 207 Ill. App. 3d at 962, 967. We explained the underlying claims arose from the plaintiff's exercise of its business judgment in conducting its principal business activity and thus concluded the claims were premised on the plaintiff's rendering or failure to render a professional service. *State Street Bank*, 207 Ill. App. 3d at 967-68. Accordingly, this court concluded the defendant had no duty to defend the underlying lawsuit against the plaintiff because no potential for coverage of the claims existed. *State Street Bank*, 207 Ill. App. 3d at 968.

¶ 34 Allied contends each alleged act of negligence against the insured must be examined separately to determine the character of the act at issue, whether it is predominantly mental/intellectual or physical/manual in nature. In support of that assertion, Allied cites *Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 812, 670 N.E.2d 1182 (1996), and *RLI Insurance Co. v. Thomas Engineering Group, LLC*, 2021 IL App (1st) 191950-U (cited as persuasive authority under Illinois Supreme Court Rule 23(e) (eff. Feb. 1, 2023)).

¶ 35 However, in *Bonnie Owen Realty, Inc.*, 283 Ill. App. 3d at 817, the reviewing court addressed as a whole and not individually the allegations in the underlying complaints, which arose from a deadly fire in an apartment building managed by the plaintiff. The negligence allegations asserted the plaintiff failed to (1) provide proper security at the apartment building, which allowed someone to enter the premises and start the fire; (2) provide a sufficient number of proper and working smoke alarms; (3) provide and maintain proper fire-extinguishing devices; (4) properly equip the property with fire escapes; (5) provide proper fire walls; (6) properly maintain the electrical wiring; and (7) warn of the hazards associated with the property. *Bonnie Owen Realty, Inc.*, 283 Ill. App. 3d at 815. The reviewing court agreed with the trial court the aforementioned

allegations were not conduct by the plaintiff constituting "professional services." *Bonnie Owen Realty, Inc.*, 283 Ill. App. 3d at 817. It found the lawsuits alleged simple negligence by the plaintiff in the maintenance of the apartment building. *Bonnie Owen Realty, Inc.*, 283 Ill. App. 3d at 817. The reviewing court concluded "[n]one of the allegations of negligence involve any specialized knowledge, labor, or skill, nor do they involve conduct that is predominantly mental or intellectual as opposed to physical or manual in nature." *Bonnie Owen Realty, Inc.*, 283 Ill. App. 3d at 817. Given the reviewing court found the underlying lawsuits did not set forth any allegations the insured was engaged in any professional services, it is clearly distinguishable from the case before this court.

¶ 36        In *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 32, the case did involve some allegations of professional services, and the reviewing court did look at the allegations individually. There, in August 2013, the insureds entered "into a 'professional services contract' with the Highway Authority to serve as a construction manager on one of three ongoing construction projects being performed on a stretch of Interstate-90." *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 5. In March 2016, a limousine driven by Aaron Nash, carrying six passengers, drove into a highway construction zone and crashed into a concrete barrier on Interstate 90, causing the limousine to flip onto its roof. *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 4. The insureds' construction site was located in the vicinity of the accident. *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 5. The plaintiff insurance company sought a declaration it had no duty to defend or indemnify the insureds in connection with the traffic accident and underlying lawsuits arising from the accident. *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 2. The allegations of negligent conduct against the insureds in the underlying complaints asserted, among other things, the insureds (1) participated in the removal of two

diagrammatic roadway signs warning motorists of an impending lane shift, (2) failed to provide adequate barriers to deflect oncoming traffic at or near the site of the accident, (3) failed to post adequate roadway signs, (4) failed to post a flagman to warn motorists of a dangerous turn, curve, or lane shift at or near the site of the accident, and (5) allowed lane-shift signs to be removed when they knew or should have known the signs were required to warn motorists of the impending lane shift. *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 31.

¶ 37 Viewing the aforementioned allegations in the light most favorable to the insureds, the reviewing court found "not all of the acts or omissions alleged as negligent conduct on the part of the insureds necessarily implicate an engineering or professional service requiring specialized skills or training." *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 32. It explained the allegations concerning the alleged removal of the roadway sign and failure to post a flagman were not activities (1) necessarily requiring specialized knowledge, labor, skill, or training, or (2) predominantly mental or intellectual, as opposed to physical or manual in nature. *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 32. The reviewing court quoted a Florida case, which stated the following: " 'Whether an act results from the nature of a professional service is determined by focusing upon the particular act itself, as opposed to the character of the individual engaging in the act.' " *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 32 (quoting *Lindheimer v. St. Paul Fire & Marine Insurance Co.*, 643 So. 2d 636, 638 (Fla. Dist. Ct. App. 1994)). It concluded the aforementioned allegations raised genuine issues of material fact as to whether the services the insureds provided at the construction site at the time of the accident were entirely professional in nature or were also in the nature of physical or manual services not requiring specialized knowledge or skill. *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶ 33.

¶ 38 First, we disagree with Allied's assertion the circuit court did not examine each of

the allegations independently like the reviewing court in *RLI Insurance Co.* In its well-reasoned order, the court in this case found the underlying complaints were devoid of allegations of any work by Allied that was incidental to or independent from its providing of professional services. Such language does not suggest the court took only an overview of the allegations in the Ferguson Complaint. What Allied overlooks is the fact the failure to both warn about and properly repair or otherwise remedy the issues with the hot water heaters must have resulted from the failure to properly conduct the survey, which Allied does not challenge falls under the professional services exclusion. Moreover, the failure to follow documents published by the manufacturer of the hot water heaters would be part of the survey process or other "professional architecture services" rendered by Allied. Additionally, failing to warn and following documents are clearly not physical or manual in nature. Likewise, the failure to properly and adequately repair or otherwise remedy the unsafe and dangerous conditions of the mechanical systems requires specialized knowledge and would be predominantly mental or intellectual in nature.

¶ 39 We also disagree with the contention the failure to warn in this case is similar to the one in *RLI Insurance Co.* There, the court only found the removal of the roadway sign and failure to post a flagman did not meet the definition of professional services. *RLI Insurance Co.*, 2021 IL App (1st) 191950-U, ¶¶ 32-33. Removing a sign and posting a flagman are physical in nature. Here, the failure to warn allegation does not include any allegations related to physical acts.

¶ 40 Allied also attempts to read the allegations of the Ferguson Complaint in isolation. However, "[t]he complaint must be read as a whole to assess its true nature." *Owners Insurance Co. v. Don McCue Chevrolet, Inc.*, 2022 IL App (2d) 210634, ¶ 19, 208 N.E.3d 1238. The three allegations in count IV of the Ferguson Complaint, which Allied asserts set forth acts that are not professional services, followed the allegations Allied failed to (1) properly and adequately perform

the survey and (2) discover and/or report the hot water heaters and their system violated the Safety Code. Thus, we do not find the failure of the three allegations to repeat the earlier allegations means the actions are not tied to the performance of the survey. Even if not tied to the survey, the allegations relate to Allied's rendering of professional architecture services, according to the allegations in the Ferguson Complaint. The allegations in the Ferguson Complaint indicate the school district contracted with Allied to perform professional architecture services relating to the construction project and, later, to conduct the survey.

¶ 41 Accordingly, we find Allied has failed to demonstrate the circuit court erred in finding the allegations of the underlying lawsuits fell under the professional services exclusion of the insurance policies. Given that finding, we do not address Allied's argument Defendant Insurer breached its duty to defend Allied.

¶ 42 III. CONCLUSION

¶ 43 For the reasons stated, we affirm the Sangamon County circuit court's judgment.

¶ 44 Affirmed.

*Allied Design Consultants, Inc. v. Pekin Insurance Co.*, 2024 IL App (4th) 230738

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 19-MR-663; the Hon. Gail L. Noll, Judge, presiding. |
| **Attorneys for Appellant:** | Steve W. Kinion, of Zack Stamp, Ltd., of Springfield, for appellant. |
| **Attorneys for Appellee:** | Robert Marc Chemers and David N. Larson, of Pretzel & Stouffer, Chtrd., of Chicago, for appellee Pekin Insurance Company.<br><br>No brief filed for other appellees. |